UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE GILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO.  3:06 CV 528-WKW |
| | ) | |
| MASTERBRAND CABINETS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, MasterBrand Cabinets, Inc. ("MBCI" or the "Company"), by counsel, submits its Brief in Support of its Motion for Summary Judgment.  As more fully discussed below, the undisputed facts demonstrate MBCI is entitled to judgment as a matter of law.

## I.    INTRODUCTION

Plaintiff, Ronnie Giles, alleges that MBCI terminated his employment in retaliation for having taken a leave of absence under the Family and Medical Leave Act. Giles' allegations are without merit.  The undisputed evidence shows that Giles' non-FMLA related absences from work were excessive and violated MBCI's Attendance policy.  As a result of Giles' excessive absenteeism MBCI terminated his employment. MBCI is entitled to summary judgment.

## II.    STATEMENT OF FACTS

### A.    RELEVANT POLICES

     1.    On July 18, 2005 MBCI implemented a new Attendance policy. MBCI gave Giles a copy of the policy on July 15, 2005.  (Giles Deposition 38:7-11; 43:1-23; 44:1-5; Associate Receipt)

     2.    Pursuant to the Attendance policy, MBCI assesses points when an employee is tardy, absent, leaves early or fails to call off work as follows:

- Tardy under 2 hours = .5

- Tardy over 2 hours = 1

- Early departure under 2 hours = .5

- Early departure over 2 hours = 1

- Absence = 2  (Consecutive days absence for medical condition = 1 per day after initial absence in certain defined circumstances).

- Failure to call in = 1

(Attendance policy; Affidavit of Ezell ¶ 6)

     3.    The Attendance policy allows employees to request use of Scheduled Time Off and/or vacation to cover absences.  (Attendance policy; Affidavit of Ezell ¶ 30 and Exhibit B)

     4.    MBCI does not automatically apply an employee's available Scheduled Time Off and/or vacation to cover an absence.  (Attendance policy; Vacation policy; Affidavit of Ezell ¶ 31 and Exhibit B)

     5.    MBCI also had in place a Handbook.  Giles received the Employee Handbook in October 2004.  (Giles Deposition 125:4-9; Employee Acknowledgement and Receipt; Affidavit of Ezell ¶ 32)

     6.    The Handbook contained the Vacation policy.  (Affidavit of Ezell ¶ 35)

7.    Giles never read the handbook. (Giles Deposition 125:10-16; 134:10-21)

**B.    GILES' LEAVE OF ABSENCE**

8.    Giles was on a leave of absence for his shoulder for a two week period beginning December 19, 2005. (Giles Deposition 48:15-18; 51:16-20; Request for Leave Form)

9.    Giles completed a Request for Leave of Absence form and returned the necessary medical certification forms. The Company approved the absence as arising under the FMLA. (Giles Deposition 97:7-13; Request for Leave Form; Affidavit of Ezell ¶ 12).

10.    Giles returned to full duty work on January 3, 2006. (Giles Deposition 51:8-20)

**C.    GILES' ABSENCES IN JANUARY 2006**

11.    As of December 16, 2005, Giles had accumulated 5.5 points. (Giles Deposition 93:1-20; 96:20-23; 97:1-6; Affidavit of Ezell ¶ 9; Attendance policy; Points Detail; Punch Detail)

12.    Giles worked 2.1 hours on January 4, 2006 before leaving work because he felt sick. (Punch Detail; Ezell ¶ 14)

13.    Pursuant to the Attendance policy, Giles incurred 1 point for leaving work early on January 4, 2006. (Giles Deposition 71:18-23; 72:5-7; Points Detail; Affidavit of Ezell ¶ 9; Attendance policy)

14.    Giles's partial absence on January 4, 2006 brought him to 6.5 points under the Attendance policy. (Giles Deposition 97:17-23; 98:15-20; Affidavit of Ezell ¶ 15; Attendance policy)

15.    Giles timely called off work on January 5, 2006 reporting that he was running a fever and would not be in. (Giles Deposition 99:17, 21-23; 100:1-5)

16.    MBCI assessed 2 points for the absence on January 5, 2006. (Points Detail; Affidavit of Ezell ¶ 19; Attendance policy)

17.    Giles timely called off work on January 6, 2006 reporting that he would not be in. (Giles Deposition 103:8-14; Ezell ¶ 20)

3

18.    MBCI assessed 1 point for the absence on January 6, 2006. (Affidavit of Ezell ¶ 21; Points Detail; Attendance policy)

19.    As a result of Giles' early departure on January 4, 2006 and his absences on January 5 and 6, 2006, Perry Ezell, Human Resources Manager, believed that Giles had reached 9.5 points and was subject to termination under the Attendance policy.  (Affidavit of Ezell ¶ 22)

20.    Pursuant to the Attendance policy, employees with 9 points or more are subject to termination.  (Affidavit of Ezell ¶ 37, Attendance policy)

## D.    GILES' TERMINATION

21.    Giles attempted to return to work on Saturday, January 7, 2006 and was sent home.  (Giles Deposition 105:8-9; 114:1-16)

22.    Giles met with Ezell on Monday, January 9, 2006.  Ezell informed Giles of his termination.  (Giles Deposition 114:7-12; 115:10-20; Termination Letter)

23.    At no time did Giles dispute the assessment of points for absences on January 5, 2006 and January 6, 2006, with Oleinick or Ezell.  (Giles Deposition 116:23; 117:1-5, 16-22)

24.    At no time did Giles request the use of Scheduled Time Off or vacation time to cover his absences on January 5, 2006 and January 6, 2006.  (Giles Deposition 102:22-23; 103:1-2; 104:15-18)

25.    Giles was allotted 80 hours of vacation time on January 2, 2006, and 16 hours of Scheduled Time Off.  (Giles Deposition 69:10-20; Affidavit of Ezell ¶ 25)

Additional facts will be provided below as needed.

## III.    SUMMARY JUDGMENT STANDARDS

The summary judgment procedure is not a disfavored procedural shortcut but, rather, is an integral part of the federal rules designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  It is a tool to isolate and dispose of unsupportable claims. *Id.* at 323-324. "Summary judgment is appropriate and, in fact, is mandated, where there are no disputed

issues of material fact and the movant must prevail as a matter of law." *Dempsey v. Atchison, Topeka and Santa Fe Ry Co.*, 16 F.3d 832, 836 (7th Cir.), cert. denied 513 U.S. 821 (1994); See also, *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006).

## IV.    GILES IS UNABLE TO ESTABLISH A PRIMA FACIE CASE OF RETALIATION

Giles alleges that the termination of his employment was in retaliation for having taken a leave of absence in December 2005. Giles is without direct evidence of retaliation. Accordingly, to establish a prima facie case of retaliation using the *McDonnell Douglas* burden shifting method, Giles must demonstrate that: "(1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Daugherty v. Mikart, Inc.* 2006 WL 3724150, *1 (C.A. 11);[1] See also, *Drago*, 453 F.3d at 1307. Moreover, "a plaintiff brining an FMLA retaliation claim faces the increased burden of showing that his employers actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* MBCI concedes that Giles engaged in protected activity when he took FMLA time in December 2005 and that the termination of his employment constituted an adverse action. However, MBCI is entitled to summary judgment as there is no causal connection between Giles' leave of absence and the subsequent termination of his employment.

---

[1] This unpublished decision is attached hereto as Appendix A for the Court's convenience.

**A.  MBCI TERMINATED GILES FOR REASONS UNRELATED TO HIS FAMILY AND MEDICAL LEAVE**

   **1.  The Attendance Policy**

On July 18, 2005 MBCI implemented a new Attendance policy.  MBCI gave Giles a copy of the policy on July 15, 2005.  (Giles Deposition 38:7-11; 43:1-23; 44:1-5; Associate Receipt)  Pursuant to the Attendance policy, MBCI assesses points when an employee is tardy, absent, leaves early or fails to call off work as follows:

- Tardy under 2 hours = .5

- Tardy over 2 hours = 1

- Early departure under 2 hours = .5

- Early departure over 2 hours = 1

- Absence = 2  (Consecutive days absence for medical condition = 1 per day after initial absence).

- Failure to call in = 1

(Attendance policy, p.2; Affidavit of Ezell ¶ 6)  Points drop off an employee's attendance record after six months.  (Attendance policy, p.2)  The Attendance policy recognizes certain types of absences as excused and for which no points are assessed.  Those types of absences are:  (1) approved vacations, (2) holidays, (3) jury duty, (4) an approved leave of absence, and (5) being subpoenaed as a witness in a court hearing.  (Attendance policy, pgs 3-4).  Employees who reach 9 points are terminated.  (Attendance policy, p. 3)

In order to avoid the assessment of points, the Attendance policy allows employees to request use of Scheduled Time Off and/or vacation to cover their absences.  (Attendance policy;  Affidavit of Ezell ¶ 30)  Employees are provided with 16 hours of

Scheduled Time Off per calendar year. (Attendance policy, p.4) The Attendance policy very clearly states,

> "Scheduled Time Off may only be used when the employee has provided their supervisor with at least 24 hours advanced notification of the need to take time off from work."

(Attendance policy, p.4) This statement makes it clear that MBCI does not *automatically* apply an employee's available Scheduled Time Off to cover an absence. (Attendance policy, p.4; Affidavit of Ezell ¶ 31)

**2.   The Vacation Policy**

MBCI also had in place a Handbook. Giles received the Employee Handbook in October 2004. (Giles Deposition 125:4-9; Employee Acknowledgement and Receipt) The Handbook contained the Vacation policy but Giles never read the Handbook. (Giles Deposition 125:4-9, 10-16; 134:10-21; Affidavit of Ezell ¶ 33) The Attendance policy clearly exempts absences due to approved vacation time from the assessment of points. Obviously, employees may use available vacation time to cover absences from work *if* requested and approved. (Attendance policy, p. 3; Vacation policy) Other than during a plant shutdown, an employee who wishes to use their vacation time must schedule their vacation time with their supervisor "as far in advance as possible." (Vacation policy) As this statement makes clear, MBCI does not *automatically* apply an employee's available vacation time to cover an absence, the employee must request use of vacation time, provide notice of the specific dates and be approved by their supervisor. Moreover, the granting of any request for vacation time in January 2006 would have been

7

on the basis of seniority. (Vacation policy) This seniority rule further demonstrates that

MBCI did not automatically take vacation time to cover absences outside of a plant

shutdown. (Vacation policy; Affidavit of Ezell ¶ 33)

### 3. Giles' Non-FMLA Related Excessive Absenteeism Resulted in the Termination of His Employment

MBCI terminated Giles for his excessive absenteeism unrelated to his leave

of absence in December 2005. Giles attendance history is as follows:

| Date | Nature of Violation | Point(s) Assessed |
|------|---------------------|-------------------|
| August 24, 2005 | tardy | .5 |
| September 1, 2005 | absent | 2.0 |
| September 8, 2005 | tardy | .5 |
| December 8, 2005 | absent | 2.0 |
| December 16, 2005 | left early | .5 |
| January 4, 2006 | left early | 1.0 |
| January 5, 2006 | absent | 2.0 |
| January 6, 2006 | absent (consecutive day for medical reason) | 1.0 |
| **TOTAL:** | | **9.5** |

(Giles Deposition 93:1-20; 96:20-23; 97:1-6; 71:18-23; 72:5-7; 97:17-23; 98:15-20; Points

Detail; Punch Detail) Accordingly, in the Company's view, Giles had reached 9 points or

more and was subject to termination as of his absence on January 6, 2006.[2] (Affidavit of Ezell ¶ 37; Termination letter)

Giles admits that MBCI correctly assessed points under the Attendance policy for his absences through and including January 4, 2006, a total of 6.5 points. (Giles Deposition 93:1-20; 96:20-23; 97:1-6; 71:18-23; 72:5-7; 97:17-23; 98:15-20) Only the three points assessed for January 5 and 6, 2006 are at issue in this case.

Without pointing to any support in the Attendance policy or Vacation policy, Giles asserts that MBCI improperly assessed points for his absences on January 5, 2006 and January 6, 2006 when it failed to *automatically* apply his vacation time. (Giles Deposition 102:11-14; 104:6-11) As stated above, the policies very plainly require an employee to provide their supervisor with advance notification of use of either Scheduled Time Off or vacation time. Moreover, Giles admits that he does not know if he had available Scheduled Time Off. (Giles Deposition 69:5-9) Similarly, Giles admits that he never asked to use vacation time to cover his absences on January 5 and 6, 2006. (Giles Deposition 102:22-23; 103:1-2; 104:15-18) Even when faced with termination, Giles never bothered to raise with anyone at MBCI his (erroneous) belief that he should not be fired because the Company should have automatically taken his Scheduled Time Off or vacation time and saved him from his own absenteeism. (Giles Deposition 116:23; 117:1-5, 16-22)

---

[2] Giles was ready to and attempted to return to work on Saturday, January 7, 2006. Giles' Complaint initially included a claim for interference with FMLA rights for failure to count his time missed from work on January 4-6, 2006 as FMLA time. In response to MBCI's Motion to Dismiss the interference claim, Giles admitted that he did not have a serious health condition during January 4-6, 2006. The Court dismissed his interference claim on August 22, 2006.

4.    **MBCI Consistently Applies its Policies**

MBCI is consistent in the application of its Attendance and Vacation policies. In the period between implementation of the Attendance policy on July 18, 2005 and Plaintiff's termination in January 2006, MBCI terminated 28 other employees for attendance related violations. (Affidavit of Ezell ¶ 37) Giles is unable to present any evidence that MBCI applied the Attendance policy or Vacation policy to him in a manner different from how it applied those same policies to other employees who had not taken leave. (Giles Deposition 121:10-18; 122:4-23; 123:1-6)

With respect to use of Scheduled Time Off and vacation time, Giles is unable to cite to any employee whose Scheduled Time Off or vacation time was automatically taken by the Company and without an advance request by the employee in lieu of assessment of points under the Attendance policy. (Giles Deposition 77:17-21; 80:1-13) It was simply not the Company's policy to do so and this is plainly stated in the Attendance and Vacation policies. (Affidavit of Ezell ¶ 34)

Finally, MBCI routinely provides its eligible employees with time off from work under the FMLA. In the period from July 2005 to January 2007, MBCI approved approximately 115 employees for FMLA leave and denied only 22 requests. (Affidavit of Ezell ¶ 38) There is no evidence whatsoever that MBCI is not meeting its obligations under the FMLA or that it has a pattern of taking adverse action against employees who take FMLA.

**B.    OLEINICK DID NOT HAVE AUTHORITY TO TERMINATE GILES**

Giles accuses only Oleinick and Ezell of retaliation.  In an attempt to articulate a motive for the alleged retaliation, Giles asserts that his supervisor, Oleinick, was unhappy that he had to occasionally cover for Giles during his December 2005 absence and thus fired him.  (Giles Deposition. 120:14-18)  At the same time, Giles admits that Oleinick never complained about covering for Giles during the December leave.  (Giles Deposition 136:10-21)  Giles also believes that Oleinick had the authority to terminate his employment.  (Giles Deposition 120:7-13)  Once again, Giles' unfounded belief is erroneous.  MBCI's Supervisors do not have the authority to terminate employees. (Affidavit of Ezell ¶ 4)  MBCI requires that employee terminations be handled through Human Resources.  (Affidavit of Ezell ¶ 4)  Giles is unable to point to any evidence supporting his belief that Oleinick or any other Supervisor had authority to terminate an employee.

With respect to Ezell, whom Giles also believes retaliated against him, Giles reports that Oleinick must have spoken to Ezell and convinced Ezell to terminate him.  (Giles Deposition 118:19-23; 119:1-5)  Yet Giles is unaware of any meetings between Oleinick and Ezell regarding the termination and has no evidence that Oleinick attempted or in fact influenced Ezell.  (Giles Deposition. 119:4-21; 120:3-6)

Giles' incorrect and unfounded assertions about how Company policy should have worked are insufficient to create a disputed material fact.  MBCI is entitled to summary judgment on Giles' claims. *Newton v. Suntrust Bank*, 2006 WL 1643346, *4

11

(M.D. Fl. 2006) ("conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.")  citing *Carter v. Miami*, 870 F.2d 578, 585 (11th Cir. 1989).

## V.    CONCLUSION

Despite plain policy language to the contrary, Giles expected MBCI to automatically apply his vacation or Scheduled Time Off to his absences on January 5 and 6, 2006 although he knows of no other employee for whom MBCI took such action. Setting aside Giles' erroneous beliefs and assumptions, the actual evidence in this case demonstrates that Giles was frequently tardy or absent from work, that he failed to request use of Scheduled Time Off or vacation to cover these absences and thus accumulated sufficient points under the Attendance policy to warrant the termination of his employment.  None of the absences for which Giles received points were covered by the FMLA.  Giles even admits that all 6.5 points which MBCI assessed through and including January 4, 2006 were appropriate.  Giles' absences on January 5 and 6, 2006 were unexcused, not covered by the FMLA and subject to points under the Attendance policy.  MBCI properly terminated Giles' employment, as it had many other employees, because he reached nine points.

Giles cannot establish a causal connection between his approved leave of absence in December 2005 and his termination in January 2006 for excessive non-FMLA

related absences. Giles thus fails to establish retaliation in violation of the Family and

Medical Leave Act and MBCI is entitled to summary judgment.

Respectfully submitted

BAKER & DANIELS LLP

By: s/Kelley Bertoux Creveling
    Mark J. Romaniuk, 15255-49
    Kelley Bertoux Creveling, 19309-49
    300 North Meridian Street, Suite 2700
    Indianapolis, Indiana 46204
    Phone: (317) 237-0300
    Facsimile: (317) 237-1000
    E-mail: mark.romaniuk@bakerd.com
    E-mail: kelley.creveling@bakerd.com

    Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I certify that on April 19, 2007, a copy of the foregoing was filed

electronically. Notice of this filing will be sent to the following party by operation of the

Court's electronic filing system. Parties may access this filing through the Court's

system.

David R. Arendall
Allen D. Arnold
Arendall & Associates
2018 Morris Avenue, Suite 300
Birmingham, Alabama 35203

s/Kelley Bertoux Creveling

# APPENDIX A

205 Fed.Appx. 826                                                        Page 1

205 Fed.Appx. 826, 2006 WL 3724150 (C.A.11 (Ga.)), 12 Wage & Hour Cas.2d (BNA) 229
**(Cite as: 205 Fed.Appx. 826)**

**H**
Daugherty v. Mikart, Inc.
C.A.11 (Ga.),2006.
This case was not selected for publication in the
Federal Reporter.Please use FIND to look at the
applicable circuit court rule before citing this
opinion. Eleventh Circuit Rule 36-2. (FIND CTA11
Rule 36-2.)
    United States Court of Appeals,Eleventh Circuit.
    Terrance K. DAUGHERTY, Plaintiff-Appellant,
                    v.
    MIKART, INC., Defendant-Appellee.
                **No. 06-13016**
              **Non-Argument Calendar.**

                Dec. 19, 2006.

**Background:** Former employee sued employer
pursuant to Family Medical Leave Act, alleging that
he was terminated in retaliation for requesting
leave. The United States District Court for the
Northern District of Georgia entered summary
judgment in favor of employer, and employee
appealed.

**Holding:** The Court of Appeals held that employee
failed to show that employer's reason for
terminating him was pretextual.

Affirmed.
West Headnotes
**Labor and Employment 231H** ⚖➙**368**

231H Labor and Employment
    231HVI Time Off; Leave
        231Hk361 Rights of Employee; Violations
            231Hk368 k. Discharge or Layoff. Most
Cited Cases
Former employee failed to show that employer's
reason for terminating him, namely that employee
had submitted fraudulent medical certification, was
pretextual for filing application for leave under
Family Medical Leave Act; employer had history of

granting FMLA leave without penalizing
employees, including former employee, lines on
medical certification form appeared to have been
altered, and date employee returned to work and
requested more leave was first opportunity
employer had to question employee about alleged
falsified certification before terminating him.
Family and Medical Leave Act of 1993, §
105(a)(1), 29 U.S.C.A. § 2615(a)(1).

**\*826** Lindsay Ross Morrison Jones, Lindsay R.M.
Jones, LLC, Decatur, GA, for Plaintiff-Appellant.
Robert Catron Stevens, Lindsay S. Marks, Rebecca
Lyn Williams, Troutman Sanders, Atlanta, GA, for
Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of Georgia. D.C. Docket No.
05-00384-CV-JOF-1.

Before BIRCH, BARKETT and HULL, Circuit
Judges.
PER CURIAM:
**\*\*1** Terrance Daugherty filed an action against his
former employer, Mikart, Inc. ("Mikart"), pursuant
to the Family and Medical Leave Act ("**FMLA**"),
29 U.S.C. § 2615(a)(1), alleging **retaliation** for his
use of medical leave. Daugherty appeals the
district court's order granting Mikart's motion for
summary judgment on his **FMLA retaliation** claim.

We review a district court order granting summary
judgment *de novo,* viewing all the facts and
reasonable inferences in the light most favorable to
the non-moving party. *Imaging Bus. Mach. L.L.C.
v. BancTec, Inc.,* 459 F.3d 1186, 1189 (11th
Cir.2006). Summary judgment is only appropriate
**\*827** when the moving party has demonstrated that
there is no genuine issue as to any material fact.
*Brooks v. County Comm'n,* 446 F.3d 1160, 1162
(11th Cir.2006). There must be enough evidence
supporting the opposing party's position that a jury
could reasonably find for that party. *Id.* A mere "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

205 Fed.Appx. 826, 2006 WL 3724150 (C.A.11 (Ga.)), 12 Wage & Hour Cas.2d (BNA) 229
**(Cite as: 205 Fed.Appx. 826)**

scintilla" of evidence is insufficient. *Id.* In the context of summary judgment, the court must look at the record as a whole, reviewing all of the evidence in the record. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). We may affirm the district court's judgment "on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1256 (11th Cir.2001).

Where a plaintiff alleges an **FMLA retaliation** claim without direct evidence of the employer's discriminatory intent, we apply the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir.2006). "To establish a prima facie case of **retaliation,** the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Id.* "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. " *Id.* at 1298.

If the plaintiff makes out a *prima facie* case, then the burden shifts to the defendant to put forth a legitimate, non-retaliatory, reason for the challenged action. *Id.* at 1297. If the defendant puts forth such a reason, the plaintiff must show that he will be able to demonstrate at trial that the defendant's stated reason for the action is pretextual. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997). "Pretext is only proven if "it is shown both that the reason was false, and that discrimination was the real reason behind the challenged action." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). "This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep.*

*Sch. Sys.,* 408 F.3d 763, 771 (11th Cir.2005) (quotation marks omitted). The passage of a short amount of time between the plaintiff's request for leave and his termination may not be sufficient, by itself, to establish pretext. *See Hurlbert,* 439 F.3d at 1298 (holding that the passage of less than two weeks between the plaintiff's request for leave and his termination was "probably insufficient to establish pretext by itself"). In addition, an employer may fire an employee based upon erroneous facts, as long as it is not for a discriminatory reason. *See Abel v. Dubberly,* 210 F.3d 1334, 1339 n. 5 (11th Cir.2000).

**2 Upon review of the record and consideration of the parties' briefs, we find no reversible error. We do not need to decide whether the district court properly determined that Daugherty did not make out a *prima facie* case because we find that Daugherty failed to show that Mikart's stated reason for terminating him was pretextual. *See Lucas,* 257 F.3d at 1256; *see also Cuddeback v. Fla. Bd. of Educ.,* 381 F.3d 1230, 1236 (11th Cir.2004) (affirming the grant of summary judgment despite the district court basing summary judgment upon its mistaken finding that the plaintiff failed to make out her *prima* ***828** *facie* case because this Court could determine, based on the record, that the plaintiff failed to show pretext). Daugherty claims that Mikart's stated reason for terminating his employment-submitting a fraudulent medical certification-was pretextual because: (1) the doctor subsequently verified his signature on the medical certification; (2) Mikart did not raise the issue of the false form until after a dispute arose regarding Daugherty wearing a mask and continuing to work in the lab; and (3) Mikart's Siegfried expressed hostility towards Daugherty because she did not believe he was really suffering from a medical condition.

Daugherty did not show that Mikart's stated reason was pretextual. While the close temporal proximity between Mikart's termination of Daugherty's employment and his application for FMLA leave is evidence of pretext, it may be insufficient to show pretext by itself. As we noted in *Hurlbert,* a span of less than two weeks is not enough. *See Hurlbert,* 439 F.3d at 1298. This is particularly true where,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

205 Fed.Appx. 826, 2006 WL 3724150 (C.A.11 (Ga.)), 12 Wage & Hour Cas.2d (BNA) 229
**(Cite as: 205 Fed.Appx. 826)**

as here, the employer has a history of granting FMLA leave without penalizing its employees, including Daugherty. Therefore, Daugherty needed to present other evidence supporting his claim that Mikart's stated reason for terminating him was pretextual.

The doctor's verification that it is his signature on the medical certification does not help Daugherty because Mikart was not questioning whether the signature was actually the doctor's, but was questioning whether the doctor had actually signed the particular form that Daugherty had provided to Mikart or if a copy of the doctor's signature had been falsely put on that form. The lines on the form did not match up and gave an appearance of having been altered. The first two pages of the submitted form were original, but the last page, the page that contained the doctor's signature, was a copy.

In addition, Mikart's termination of Daugherty's employment only after he returned to work on April 15 and requested more FMLA leave does not undercut Mikart's stated reason for the termination. The date that Daugherty returned to work, April 15, was also the first opportunity that Mikart's Siegfried had to question Daugherty about the allegedly falsified document. Therefore, Mikart's termination of Daugherty's employment on April 16, 2003, does not show that Mikart's reason for terminating Daugherty was pretextual because Mikart officials wished to speak with Daugherty and give him a chance to explain the appearance of the form before terminating him. Furthermore, evidence showed that Mikart officials attempted to meet with Daugherty prior to his return to work, but Daugherty failed to show at the scheduled meeting.

**3 There is some evidence that Siegfried displayed hostility towards Daugherty when he returned to work. However, even if such hostility were present, it does not indicate that Mikart's stated reason for terminating Daugherty was pretextual because the hostility occurred after Daugherty submitted the medical certification form and Mikart questioned its authenticity. Siegfried's hostility, therefore, could have been caused by her belief that Daugherty had submitted a falsified form. In any

event, Siegfried's hostility, even when combined with the temporal proximity between Daugherty's leave request and firing, is insufficient to allow a reasonable trier of fact to find that Mikart's basis for firing him was pretextual.

Therefore, Daugherty failed to show that Mikart's stated reason for terminating his employment was pretext because he did not show either that the reason given *829 was false, or that discrimination was the real reason. See Hicks, 509 U.S. at 515, 113 S.Ct. at 2752. Accordingly, we affirm the district court's grant of Mikart's motion for summary judgment.

**AFFIRMED.**

C.A.11 (Ga.),2006.
Daugherty v. Mikart, Inc.
205 Fed.Appx. 826, 2006 WL 3724150 (C.A.11 (Ga.)), 12 Wage & Hour Cas.2d (BNA) 229

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.