## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

**RONNIE GILES,**

    **PLAINTIFF,**

**V.**                                          **CIVIL ACTION NO: 3:06-cv-00528-WKW-WC**

**MASTERBRAND CABINETS, INC.,**

**DEFENDANT.**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Defendant has filed a motion for summary judgment that is without merit. The Court should note that Plaintiff's Response was submitted in less than 24 hours after Defendant filed its motion. The facts of this case provide sufficient evidence to deny summary judgment. Defendant's responses to Requests for Admission show that much of the difficult analysis of an FMLA retaliation claim is not in dispute. Nevertheless, Defendant has filed this unnecessary motion that ignores current case law. Plaintiff is due his day in Court to allow a jury to decide whether Defendant's actions violated the FMLA.

### II.    Facts

The facts of this case occur over a short period of time and are not an

overwhelming amount of material. However, the short time frame does not make the case any less important to the Plaintiff or any less a violation of the law. Defendant approved the Plaintiff for FMLA leave from December 19, 2005 through January 2, 2006. (Pl. Ex. 1: RFA No. 2). Defendant's H.R. Manager, Perry Ezell, approved the Plaintiff's leave. (Pl. Ex. 2: Int. No. 12). Plaintiff's team leader, Jon Oleinick, coded Plaintiff's approved leave into the computer system. (Pl. Ex. 2: Int. No. 12).

Plaintiff returned to work from FMLA leave on January 3, 2006 and worked the entire day. (Pl. Ex. 1: RFA No. 3). Plaintiff arrived for work on January 4, 2006 and worked a little over two hours before having to clock out and go home due to an illness. (Pl. Ex. 1: RFA No. 4). When Plaintiff requested to go home, Oleinick then stated **"we're in the same fix as we were before."** (Pl. Depo. 54:19-20) (emphasis added). Plaintiff complied with Defendant's policies for clocking out and leaving early from the shift. (Pl. Ex. 1: RFA No. 5). Plaintiff was absent from work on January 5 and 6, 2006, but properly reported his absences pursuant to company policy. (Pl. Ex. 1: RFA No. 11). Plaintiff was terminated on January 9, 2006. (Pl. Ex. 1: RFA No. 8). The decision to terminate Plaintiff was made by Jon Oleinick and Perry Ezell. (Pl. Ex. 2: Nos. 5.d. and 5.f.). According to the Defendant, "Plaintiff's termination was the result of excessive absenteeism in violation of the company attendance policy." (Pl. Ex. 2: Int. No. 5.d.). A clear

2

reading of Defendant's policy (Pl. Ex. 3) and Plaintiff's attendance records (Pl. Ex. 4) show that the Defendant violated its own policy. A question of fact exists as to whether Defendant terminated Plaintiff in retaliation for taking FMLA leave.

## III.   Defendant Failed to Take the Facts in the Light Most Favorable to the Plaintiff as Required under the Summary Judgment Standard

In its unanimous decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097 (2000), the Supreme Court outlined the summary judgment standard:

> In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.

In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg. Inc.*, 494 U.S. 545, 554-555 (1990); *Liberty Lobby, Inc., supra*, at 254; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 n.6 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby, Inc., supra*, at 255. Thus,

although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves,* 530 U.S. at 150-151.    That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

## IV.    Argument and Analysis

### A. Prima Facie Case

In order to prevail on an FMLA retaliation claim, an employee must show that the employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.    *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 n.9 (11th Cir. 2001).    "In order to establish a *prima facie* case of FMLA retaliation, the plaintiff must show that: (1) [he] engaged in a statutorily protected activity; (2) [he] experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Davis v. Albany Int'l Jeff Johnston*, 2006 U.S. Dist. LEXIS 75778 [*21] (M.D. Ala. 2006) (*citing Hurlbert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)).    Plaintiff can certainly establish a *prima facie* case.

Defendant does not dispute that Plaintiff engaged in a statutorily protected

4

activity. "Defendant **admits that Plaintiff was approved for Family and Medical Leave** from December 19, 2005 through and including January 2, 2006." (See Pl. Ex. 1: RFA No. 2) (emphasis added). Defendant has also conceded this element in its brief. (See Def. Brief P. 5). The first element of the prima facie case is not in dispute and in the Plaintiff's favor.

Defendant does not dispute that Plaintiff suffered a tangible adverse job action. "MBCI also **admits that Plaintiff's employment was terminated** on Monday, January 9, 2006. (Pl. Ex. 1: RFA No. 8) (emphasis added). Defendant has also conceded this element in its brief. (See Def. Brief P. 5). The second element of the prima facie case is not in dispute and in the Plaintiff's favor.

Defendant's discovery responses have presented substantial evidence to support a finding that a causal connection does in fact exist to support that Plaintiff's medical leave is related to his termination.[1] "The burden of causation may be met by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action." *Bodrick v. Bellsouth Bus. Sys. Inc.,* 2006 U.S. Dist. LEXIS 11656 (N.D. Ga. 2006) (*citing Clark County Sch. Dist. v Breeden*, 532 U.S. 268, 273 (2001)). "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material

---

[1] Defendant fails to cite in its Brief any relevant case law or authority regarding the actual factors that a Court may consider in analyzing a causal connection.

fact of a causal connection.'" *Hulbert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (quoting *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). There can be no dispute that **seven days** is well within the accepted range for temporal proximity. "Defendant **admits** that Plaintiff was approved for Family and Medical Leave from December 19, 2005 through and including *January 2, 2006.*" (Pl. Ex 1: RFA No. 2). "MBCI also **admits** that Plaintiff's employment was terminated on Monday, *January 9, 2006.* (Pl. Ex. 1: RFA No. 8) (emphasis added). Defendant cannot dispute that the evidence supports a finding for the Plaintiff in regard to temporal proximity.

The Defendant's decision makers certainly had knowledge of Plaintiff's FMLA leave. "Perry Ezell, [Defendant's] HR Manager approved Plaintiff's leave. Jon Oleinick, Team Leader, coded Plaintiff's absences as approved leave in the computer system." (Pl. Ex. 2: Int. No. 12). Mr. Ezell and Mr. Oleinick are the persons making the decisions regarding disciplinary actions, including Plaintiff's termination. (See Pl. Ex. 2: Int. Nos. 5.d. and 5.f.).[2] Defendant has now changed its position to say Mr. Oleinick did not have authority to terminate Plaintiff. (Affidavit of Ezell ¶ 4). "Close temporal proximity between the protected conduct and the adverse-employment action can be sufficient circumstantial evidence of causation to allow the retaliation claim to proceed to the jury, unless there is

---

[2] Plaintiff brings to the Court's attention that Perry Ezell signed and verified these Interrogatory Answers.

6

undisputed proof that the employer had no knowledge of the protected activity at the time the decision was made." *Ashe v. Aronov Homes, Inc.*, 354 F. Supp. 2d 1251, 1264 (M.D. Ala. 2004). Defendant can make no such argument that the decision-makers for Plaintiff's termination did not have knowledge of his statutorily protected FMLA leave. Plaintiff has presented substantial evidence, much of which has been admitted by Defendant, to satisfy his burden of proving a *prima facie* case.

### B. Defendant's Action are Pretext for Retaliation[3]

"Only after the plaintiff makes this prima facie case of discriminatory retaliation does the burden shift to the defendant to rebut the presumption of retaliation by producing a legitimate reason for the adverse action." *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). Defendant claims to have terminated Plaintiff under the guise of its attendance policy. (See Pl. Ex. 3). Defendant states that Plaintiff's termination was the result of "excessive absenteeism in violation of the company attendance policy." (Pl. Ex. 2: Int. No. 5.d.)

Once a defendant comes forth with a legitimate nondiscriminatory reason, "the plaintiff must show that the defendant's proffered reason for the adverse action is pretextual." *Hulbert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286,

---

[3] It is unclear from its Brief if Defendant has waived the right to argue if it's legitimate non-discriminatory reason for termination was not a pretext for retaliation. Defendant's introductory argument appear to rest on the position that Plaintiff cannot assert a prima facie case. Defendant argues a lack of causal connection, but then appears to place the remainder of its argument on the issue of pretext.

1297 (11th Cir. 2006). Defendant's termination of Plaintiff is a pretext for retaliation. An examination of the Defendant's attendance policy and the **admitted** facts indicates that Defendant violated its own policy in regard to its reason for termination. Plaintiff will illustrate the facts with the following timeline below:

- "Defendant admits that Plaintiff returned from leave on **January 3, 2006** and worked the entire day." (Pl. Ex. 1: RFA No. 3).

- "Defendant admits that Plaintiff worked 2.1 hours on **January 4, 2006.** Defendant admits that Plaintiff left work early on January 4, 2006, after reportedly feeling ill." (Pl. Ex. 1: RFA No. 4). "Defendant admits that Plaintiff clocked out and notified his supervisor when he left early on January 4, 2006 and accordingly complied with Defendant's rules and policies. (Pl. Ex. 1: RFA No. 5). "Plaintiff had accumulated 5 ½ points and was assessed an additional point for leaving early on January 4, 2006." (Pl. Ex. 1: RFA No. 10).

Hence, Plaintiff has accumulated 6.5 points under Defendant's policy.

- "When Plaintiff left work on January 4, 2006 his supervisor, John Oleinick, asked him if he was staying or going home because of his sickness. Plaintiff told him he had to leave. **Oleinick then stated "we're in the same fix as we were before."** (Pl. Depo. 54:19-20): See Pl. Amended and Restated

Complaint Doc. No. 11, ¶ 11) (emphasis added).

- "Defendant admits that Plaintiff called in to report his absences on January 5 and 6, 2006 and **accordingly complied with Defendant's Attendance Policy." (Pl. Ex. 1: RFA No. 11) (emphasis added).**

Defendant cannot argue that Plaintiff failed to follow its policy regarding absences. Plaintiff requests that the Court note that January 4, 5, and 6 are consecutive days on the calendar.

However, Defendant failed to follow its own attendance policy regarding absences on two separate aspects of the policy. Defendant deliberately tabulated the attendance points incorrectly and furthermore Defendant failed to follow the progressive discipline policy in regard to the policy.

**1.    The Point System**

Defendant's point system clearly addresses consecutive days' absences for illness of either the employee or the employee's child. (Pl. Ex. 3). Defendant's policy addresses "Related Consecutive Absences." *Id.*

> The Company understands that in limited circumstances, this policy could substantially impact an employee with otherwise good attendance. **An employee who is required to miss consecutive work days due to their own medical condition** or that of a dependent child shall be assessed one point per day following the initial absence. An employee shall only be entitled to a reduced point schedule provide the employee timely reports such day's absence on the Absence Line and **the employee has exhausted all Schedule Time Off and Vacation." (Pl. Ex. 3) (emphasis added).**

The Defendant then provides an example that is directly on point to the facts of this case. This example shows that Defendant violated its own policy when terminating Plaintiff's employment.

> Example: Dependent child wakes up sick on Thursday morning. Employee timely calls in to report his/her absence. Dependent child remains sick on Friday and Saturday (employee is scheduled to work both day but is unable to work because the employee does not have dependent care). Employee must timely call in to report each day's absence. At the time of the dependent child's illness, the employee has 2 hours scheduled time off and 8 hours of vacation remaining. (Pl. Ex. 3).

> Under this scenario, Thursday counts as an absence so the employee will be assessed 2 points. Friday's absence from work can be covered by Scheduled Time Off and vacation (assuming this employee is scheduled to work no more than 10 hours). The employee may be able to partially cover their absence from work on Saturday with the remaining hours of vacation, if any. If Saturday cannot be covered with vacation, the employee would be assessed one additional point provided he/she timely reports the Absence.

Like the example above, Plaintiff timley reported his absence. "Defendant **admits** that Plaintiff called in to report his absences on January 5 and 6, 2006 and according **complied** with Defendant's Attendance Policy." (Pl. Ex. 1: RFA No. 11) (emphasis added). Also like the example above, Defendant's records indicate that Plaintiff has 80 hours of unused vacation on January 5 and 6. (See Pl. Ex. 4: last page).

Plaintiff's leaving early on January 4, 2006 for illness comprises the beginning of the consecutive days, thus leaving January 5 and 6 as vacation days.

The dates of January 5 and 6 do not require an assessment of an additional point under Defendant's policy. Plaintiff's absences on January 5 and 6 registered 0 points because Plaintiff had vacation time to cover the missing days. Defendant argues that Plaintiff failed to follow the steps set out in the vacation policy. Defendant's argument is illogical. The above cited example and the policy does not require the employee to ask for Vacation/Scheduled Time Off, rather the example tells an employee he or she can cover the absence with this time. Defendant argues that Plaintiff should have given the company advanced notice of his time off for his illness, even though any reasonable person may not know he is ill until he or she wakes up that morning. Plaintiff cannot possibly give more advanced notice as he "complied with Defendant's Attendance Policy" by calling in the morning that he is aware of his consecutive day of illness. (Pl. Ex. 1: RFA No. 11). Defendant's Human Resources manager has stated that the attendance policy still requires an employee to "jump through the hoops" of the vacation policy. However, the basis for which all employees interpret the policy is found in the example above. This example provides no such requirement to the Plaintiff or any other employee to affirmatively request use of vacation time. The vacation policy itself makes no mention of any cross-reference to the attendance policy. (See Def. Ex. 3: Sub Exhibit F).

Plaintiff is entitled to the reduced point schedule only if he has not

exhausted his vacation. Defendant cannot dispute that Plaintiff should not have been assessed a point on January 5 & 6, 2006 under this policy. Plaintiff should have been assessed zero points for this day and a vacation day should have covered the absence. When calculating the point total, Plaintiff had the following total points:

| Pre-January 4, 2006: | 5.5 points | |
| January 4, 2006 | 6.5 points | 1 point addition for leaving early[4] |
| January 5, 2006 | 6.5 points | 0 point addition because unused vacation existed in Plaintiff's pursuant to Defendant's records. |
| January 6, 2006 | 6.5 points | 0 point addition because unused vacation existed in Plaintiff's pursuant to Defendant's records. |

(Pl. Ex. 3). An employer's violation of its own procedures can be evidence of pretext. *Bass v. Bd. of County Comm'rs, Orange County*, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001). *See also Rudin v. Lincoln Land Community Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("An employer's failure to follow its own internal procedures can constitute evidence of pretext."). Defendant has ignored its own policy regarding tabulation of attendance points by adding points to Plaintiff's total point that do not exist under the policy. Defendant's action is a pretext for retaliation.

---

[4] Even giving the Defendant the benefit of the doubt, Plaintiff never exceeded the 9 points, even if 2 points were added on January 5, 2006.

## 2.    The Progressive Discipline System

Defendant's attendance policy contains a section regarding disciplinary actions.  The policy states the following under its **Disciplinary Action** heading:

"An employee will be issued the following disciplinary action if they receive or exceed the points listed below:

3 Points = Verbal Warning
6 Points = Written Warning
9 Points = Termination of Employment"

(See Pl. Ex. 3).  It is undisputed that Defendant did not issue Plaintiff a written warning for attendance issues.  (See Pl. Ex. 2: Int. No. 5.d.).  Instead, Defendant disregarded the required step of giving Plaintiff a written warning.  Plaintiff should have received a written warning on January 4, 2006, after accumulating 6 points under the system.  However, Defendant failed to tabulate the points correctly. Defendant's violation of its own policy regarding progressive discipline is another example that the stated reason for termination was a pretext for retaliation.

Plaintiff's termination was decided by Oleinick, a manager who was not happy that Plaintiff had taken medical leave and said so.  Defendant's policy regarding absenteeism was completely disregarded.  This disregard by Defendant's decision-makers resulted in a termination that was in retaliation for Plaintiff's FMLA leave.  Defendant has made a lot of effort to try and point out that one comment is not sufficient to show retaliation, but considering that Plaintiff was exposed to the decision-maker for **one day** (January 3, 2006), this is sufficient to

13

show animus.[5]  Plaintiff was then absent from work on January 4, 5, and 6 and then suspended and terminated on January 7 and 9, respectively.  Defendant should not be rewarded for getting Plaintiff out of the building in an expeditious manner, thus limiting any additional showing of retaliatory intent.

## V.    Conclusion

Plaintiff is due his day in Court.  Plaintiff has presented sufficient evidence for a reasonable trier-of-fact to determine that Defendant's actions were not legitimate, but rather a pretext for retaliation.

WHEREFORE PREMISES CONSIDERED, Plaintiff moves this Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/ Allen D. Arnold

Allen D. Arnold

---

[5] Oleinick's comment is arguably direct evidence of a retaliatory animus.  "Direct evidence is evidence, which if believed proves existence of a fact in issue without inference or presumption." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987).  The cited testimony is direct evidence that Oleinick's held a negative attitude regarding Plaintiff's previous absences.  In *Standard v. A.B.E.L. Servs., Inc.*, the Court held that because comments and documentation were made by the decision-maker and were related to the decision-making process of which plaintiff complained direct evidence could be found.  161 F.3d 1318, 1330 (11th Cir. 1998).  Oleinick's coding of attendance into Defendant's computer system, coupled with his negative comment, are sufficient to show a reasonable trier-of-fact that direct evidence of retaliation existed.

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, Alabama 35203
205.252.1550 - Office
205.252.1556 - Facsimile

## CERTIFICATE OF SERVICE

I have filed the foregoing with the Clerk of the Court using the CM/ECF system on
April 20, 2007:

    Mark J. Romaniuk
    Kelley Bertoux Creveling


                /s/ Allen D. Arnold
_____
              Of Counsel