UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RONNIE GILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:06 CV 528-WKW |
| ) | |
| MASTERBRAND CABINETS, INC. ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

Defendant, MasterBrand Cabinets, Inc. ("MBCI" or the "Company"), by counsel, submits its Reply Brief in Support of its Motion for Summary Judgment. As more fully discussed below, the undisputed facts demonstrate MBCI is entitled to judgment as a matter of law.

**I.      INTRODUCTION**

In his response, Plaintiff, Ronnie Giles, claims MBCI failed to follow its policies and thus is not entitled to summary judgment. As further discussed below, MBCI followed its Attendance policy and terminated Giles for excessive absenteeism as it had 28 other employees since implementation of the policy. The overwhelming objective, undisputed evidence is that Giles was terminated for excessive absences unrelated to his leave - a legitimate non-discriminatory reason. Giles attempts to demonstrate pretext by claiming that the Company did not follow its policies, however,

he presents no evidence in support of his personal theories about how the Company should have interpreted and applied the Attendance policy, cites to no employees who were treated in accordance with his theories, cites to no non-FMLA taking employees treated more favorably under the policy and recites no evidence indicating that the decision-maker did not honestly believe Giles had accumulated enough points to be terminated. Accordingly, Giles failed to establish that there are material facts in dispute sufficient to defeat summary judgment.

## II.    ARGUMENT

MBCI has established a legitimate non-discriminatory reason for Giles' termination which Giles has failed to rebut with evidence that the offered reason is pretext. Assuming for purposes of argument only that Giles successfully made out his prima facie case, and assuming that MBCI has demonstrated a legitimate non-retaliatory reason for Giles' termination, which it has, Giles then must be able to demonstrate that MBCI's stated reason for Giles' termination is pretext. Pretext means "It is shown both that the reason was false, and that discrimination was the real reason behind the challenged action." *Daugherty v. Mikart, Inc.*, 205 Fed. Appx. 826, 827 (11th Cir. 2006). Giles must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for the actions that a reasonable fact finder could find the unworthy of credence." *Id.* Giles has come forth with no such evidence.

A.   **MBCI FOLLOWED AND APPLIED ITS ATTENDANCE POLICY**

1.   **MBCI Does Not Automatically Apply Available Vacation or Scheduled Time Off To Avoid Assessment of Points Under the Attendance Policy**

Giles argues that MBCI did not follow its policies and hence that this shows pretext. Giles' evidence fails. Giles is in agreement that before his absences on January 4-6 he had already reached 5.5 points. (Giles Dep. 93:1-20; 96:20-23; 97:1-6; Affidavit of Ezell ¶ 9; Attendance Policy; Points Detail; Punch Detail)  Giles' theory that they Company should have automatically used available vacation and scheduled time off carries little weight in light of the fact that Giles had 8 hours of scheduled time off available to cover the absences (and associated, undisputed 5.5 points) during the period of August 2005 through December 2005. (Affidavit of Ezell ¶ 39)  These are absences that occurred <u>before</u> Giles took any leave and yet MBCI assessed points under the Attendance policy - points Giles never did and still does not dispute.  Giles response utterly ignores the fact that the Company did not automatically take his available scheduled time off for any of those absences or explain why he was properly assessed points for those absences if he had available time off.  It makes little sense for Giles to concur in the assessment of points before his leave even though he had scheduled time off available and yet argue that for post leave absences the Company should have automatically taken his scheduled time off.  After his leave, MBCI treated Giles and his absences the same way it treated Giles and his absences before the leave.

Giles' next argument is that he believes the example in the Attendance policy demonstrates that the Company will automatically take available vacation and scheduled time off to cover absences. This argument is equally facile. Giles has not cited to the Court even a single employee whose vacation/scheduled time off was taken automatically to cover absences from work in order to demonstrate that Giles was treated differently. This is because it was not the company's policy to do so. (Affidavit of Ezell ¶ 31)

The quoted example demonstrates merely how an employee with available time *may* cover absences to avoid the assessment of points. Nowhere does the example absolve employees of the plainly stated policy requirements that an employee notify the company of his or her intention to use scheduled time off or vacation. Giles erroneously claims "the above policy does not require the employee to ask for Vacation/Scheduled Time Off . . . " (Response at p.11) While perhaps the paragraph cherry picked by Giles does not tell employees they must schedule such time in advance, it is without question that the policies in fact contain explicit instructions on this point. The Attendance policy very clearly states,

> "Scheduled Time Off may only be used when the employee has provided their supervisor with at least 24 hours advanced notification of the need to take time off from work."

(Attendance policy, p.4) This statement makes it clear that MBCI does not *automatically* apply an employee's available Scheduled Time Off to cover an absence. (Attendance policy, p.4; Affidavit of Ezell ¶ 31) Similarly, the vacation policy states,

4

"an employee who wishes to use their vacation time must schedule their vacation time with their supervisor "as far in advance as possible." (Vacation policy) As this statement makes clear, MBCI does not *automatically* apply an employee's available vacation time to cover an absence, the employee must request use of vacation time, provide notice of the specific dates and be approved by their supervisor.[1]

## 2. Discipline Under the Attendance Policy Was Properly Administered

Giles next takes MBCI to task for not issuing to him a Written Warning on January 4, 2006 when he reached 6.5 points. MBCI could not have issued discipline to Giles on January 4, 2006 because he was not at work to receive the discipline. As a result of leaving work early on January 4, 2006, Giles was subject to the issuance of 1 point. He did not return to work on Thursday, January 5 or Friday, January 6, 2006 either. Thus, Giles did not return to work between the time he earned enough points to be issued a Written Warning and when he earned enough points to be terminated. There is nothing sinister in these events. It simply indicates that Giles was in serious points trouble before his absences of January 4-6 and that his consecutive absences quickly culminated in his termination before he even returned to work.[2]

---

[1] It is interesting to note that Giles claims to have knowledge of or an opinion of how the vacation policy works given that he testified he never read the Handbook which contained the policy. (Giles Deposition 125:4-9, 10-16; 134:10-21)

[2] Giles' claim that MBCI failed to follow its policy in the assessment of points is actually an argument in MBCI's favor. Giles points out that because he had available vacation and scheduled time off on January 4-6 he should not have been entitled to the point reduction for consecutive days absences. This necessarily means that MBCI made a mistake in his favor. A correct calculation of points by the method Giles advocates results in the assessment of <u>more</u> points. Using Giles' method, he would have had 10.5 points instead of 9.5 points as of the termination of his employment. That MBCI made an error in Giles' favor cannot be evidence of discriminatory animus.

5

## B. EZELL SINCERELY BELIEVED THAT GILES HAD ACCUMULATED SUFFICIENT POINTS TO WARRANT TERMINATION UNDER THE ATTENDANCE POLICY

Without any evidence, Giles insists that his supervisor, rather than the Ezell (the Human Resources Manager) terminated him. Giles is wrong. Ezell had the authority to and did terminate Giles' employment. (Affidavit of Ezell ¶¶ 22, 24; Termination letter) Giles presents absolutely no evidence that Ezell's conclusion that Giles' absences on January 4, 5, and 6 brought him to sufficient points for termination under the Attendance policy was not a sincerely held belief or was motivated by discriminatory animus.

## C. TEMPORAL PROXIMITY ALONE DOES NOT ESTABLISH PRETEXT

Finally, Giles wisely appears to rely on temporal proximity only in an effort to establish his prima facie case. Giles cannot use his temporal proximity argument to establish pretext. It is well settled that temporal proximity alone cannot establish pretext. *Hurlbert v. St. Mary's Healthcare System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (Two week period between request for leave and termination standing alone would be insufficient to establish pretext.); *McCann v. Mobile County Personnel Board, et al.*, 2006 WL 1867486, *7 (M.D. Ala.) ("Temporal proximity . . . alone is not sufficient to establish pretext."). This is particularly true where, as here, an employer has a strong history of granting FMLA without any penalty to its employees. See, *Daugherty,* 205 Fed. Appx. at 827. It is undisputed that MBCI routinely provides eligible employees with time off from work under the FMLA. As previously stated, looking only at the

period from July 2005 (when the Attendance policy was implemented) to January 2006 (when Giles was terminated) MBCI approved approximately 115 employees for FMLA leave. (Affidavit of Ezell ¶ 38) Moreover, during that same period of the 28 employees other than Giles terminated for attendance related violations only two had ever taken FMLA. (Affidavit of Ezell ¶ 40)

        MBCI has submitted ample evidence of the routine assessment of points under its Attendance policy both against Giles and others. Where such evidence exists a plaintiff cannot establish pretext by merely pointing to the closeness in time between termination and leave. See, *Gamba v. City of Sunrise*, 157 Fed. Appx. 112 (11th Cir. 2005) (Plaintiff produced virtually no evidence of other than to point to temporal relationship between leave and termination. "Where the employer produced a significant evidence of the employee's poor performance, it is not enough that the request for leave and the termination are closely related in time.")

        Of course, MBCI was not in control of Giles' absences and thus not in control of the ultimate temporal proximity between the leave and the termination. It was Giles who, despite being dangerously close to termination under the Attendance policy and not being able to cover his absences with FMLA was nevertheless absent from work for 2.5 days, incurring sufficient points to warrant the termination of his employment under the Attendance policy. Having created the temporal proximity, Giles cannot now rely on that temporal proximity and wield it against MBCI in an effort to establish pretext.

### III. CONCLUSION

Despite plain policy language to the contrary and practice to the contrary, Giles expected MBCI to automatically apply his vacation or Scheduled Time Off to his absences on January 5 and 6, 2006. Yet MBCI did not automatically apply available Scheduled Time Off to Giles' pre-leave absences and Giles himself knows of no other employee for whom MBCI took such action.

Setting aside Giles' erroneous beliefs and assumptions, the actual evidence in this case demonstrates that Giles was frequently tardy or absent from work, that he failed to request use of Scheduled Time Off or vacation to cover these absences and thus accumulated sufficient points under the Attendance policy to warrant the termination of his employment. None of the absences for which Giles received points were covered by the FMLA. Giles even admits that all 6.5 points which MBCI assessed through and including January 4, 2006 were appropriate. Giles' absences on January 5 and 6, 2006 were unexcused, not covered by the FMLA and subject to points under the Attendance policy. MBCI properly terminated Giles' employment, as it had many other employees, because he reached nine points.

Giles cannot establish a causal connection between his approved leave of absence in December 2005 and his termination in January 2006 for excessive non-FMLA related absences. Giles thus fails to establish retaliation in violation of the Family and Medical Leave Act and MBCI is entitled to summary judgment.

Respectfully submitted

BAKER & DANIELS LLP

By: s/Kelley Bertoux Creveling
    Mark J. Romaniuk, 15255-49
    Kelley Bertoux Creveling, 19309-49
    300 North Meridian Street, Suite 2700
    Indianapolis, Indiana  46204
    Phone:  (317) 237-0300
    Facsimile:  (317) 237-1000
    E-mail:  mark.romaniuk@bakerd.com
    E-mail:  kelley.creveling@bakerd.com

 Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I certify that on May 9, 2007, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following party by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David R. Arendall
Allen D. Arnold
Arendall & Associates
2018 Morris Avenue, Suite 300
Birmingham, Alabama 35203

                                                   s/Kelley Bertoux Creveling