# EXHIBIT 9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE GILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:06 CV 528-WKW |
| | ) | |
| MASTERBRAND CABINETS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF PERRY EZELL

Affiant, Perry Ezell, being first duly sworn upon his oath deposes and states as follows:

1.    I am an adult over the age of 18 of sound mind and competent to testify as to all matters contained in this Affidavit. All matters contained in this Affidavit are within my personal knowledge or were obtained in the regular course of my duties.

2.    I have been employed by MasterBrand Cabinets, Inc. for 1 year and 7 months. I am currently employed as the Human Resources Manager of the Auburn, Alabama facility, a position I have held since September 7, 2005.

3.    Ronnie Giles is a former MBCI employee.

4.    Giles' Supervisor was Jon Oleinick. MBCI's Supervisors do not have the authority to terminate employees. MBCI requires that employee terminations be handled through Human Resources.

5.    I terminated Mr. Giles on January 9, 2006, for having reached in excess of 9 points under the Attendance policy effective as of his absence on January 6,

2006.  I provided Mr. Giles with a written termination letter.  A true and accurate copy of the termination letter is attached hereto as Exhibit A.

      6.     Pursuant to the Attendance policy, MBCI assesses points when an employee is tardy, absent, leaves early or fails to call off work as follows:

- Tardy under 2 hours = .5

- Tardy over 2 hours = 1

- Early departure under 2 hours = .5

- Early departure over 2 hours = 1

- Absence = 2  (Consecutive days absence for medical condition = 1 per day after initial absence).

- Failure to call in = 1

Employees who reach 9 points are terminated for excessive absenteeism.  A true and accurate copy of the Attendance policy is attached hereto as Exhibit B.

      7.     MBCI routinely and consistently applies its Attendance policy.

      8.     In general, points are assessed on the Monday when payroll is posted.  The supervisor then receives a points printout for his or her employees and will act as necessary on that points printout by the following Friday.

      9.     MBCI utilizes an electronic time clock system to record employee work time and absences.  According to the time clock system, Mr. Giles' attendance history leading to the termination of his employment was as follows:

| Date | Nature of Violation | Point(s) Assessed |
|---|---|---|
| August 24, 2005 | tardy | .5 |

| September 1, 2005 | absent | 2.0 |
|---|---|---|
| September 8, 2005 | tardy | .5 |
| December 8, 2005 | absent | 2.0 |
| December 16, 2005 | left early | .5 |
| January 4, 2006 | left early | 1.0 |
| January 5, 2006 | absent | 2.0 |
| January 6, 2006 | absent (consecutive day for medical reason) | 1.0 |
| **TOTAL:** | | **9.5** |

     10.    In terminating Mr. Giles' employment I relied on the Punch Detail and Points Detail reports generated by the electronic time clock system. True and accurate copies of these reports are attached hereto collectively as Exhibit C.

     11.    In addition to the above absences, Mr. Giles was absent from work due to an approved leave of absence from December 19, 2005 through January 2, 2006.

     12.    Mr. Giles qualified for and the Company treated the above absences as FMLA time. But no points were assessed for these absences.

     13.    Mr. Giles returned to work on January 3, 2006.

     14.    Mr. Giles worked 2.1 hours on January 4, 2006 before leaving work because he felt sick.

     15.    Pursuant to the Attendance policy, Mr. Giles incurred 1 point for leaving work early.

     16.    Prior to his partial day absence on January 4, 2006, Mr. Giles had

accumulated 5.5 points.

17.    Mr. Giles' partial absence on January 4, 2006 brought him to 6.5 points under the Attendance policy.

18.    Mr. Giles timely called off work on January 5, 2006 reporting that he was running a fever and would not be in.

19.    I calculated 2 points for the absence on January 5, 2006.

20.    Mr. Giles timely called off work on January 6, 2006 reporting that he would not be in.

21.    I calculated 1 point for the absence on January 6, 2006.

22.    As a result of the absence of January 6, 2006, and after reviewing Mr. Giles' attendance records, specifically the information maintained in the electronic time keeping system, I determined that Mr. Giles had reached 9.5 points.

23.    Mr. Giles returned to work on Saturday, January 7, 2006, but was advised by his Supervisor to go home and report to Human Resources on Monday, January 9, 2006.

24.    Mr. Giles met with me on Monday, January 9, 2006 and I advised him of the termination of his employment because he had reached 9 points as of his absence on January 6, 2006.

25.    Giles was allotted 80 hours of vacation time on January 2, 2006, and 16 hours of Scheduled Time Off.

26.    Mr. Giles had available vacation time and/or Scheduled Time Off as of the date of his termination.

-4-

27.    At no time did Mr. Giles dispute the assessment of points for absences on January 5, 2006 and January 6, 2006.

28.    The Attendance policy under which Mr. Giles' employment was terminated was implemented on July 18, 2005.

29.    Mr. Giles received a copy of the Attendance policy on July 15, 2005. A true and accurate copy of the Associate Receipt is attached hereto as Exhibit D.

30.    The Attendance policy allows employees to request use of Scheduled Time Off and/or vacation to cover absences if properly requested and approved.

31.    MBCI does not automatically apply an employee's available Scheduled Time Off and/or vacation to cover an employee's absence. If the employee does not request use of Scheduled Time Off and/or vacation to cover an absence, points will be assessed and the employee's bank of Scheduled Time Off and/or vacation will not be touched.

32.    MBCI also had in place an Employee Handbook. Mr. Giles received the Employee Handbook in October 2004. A true and accurate copy of the Handbook Receipt is attached hereto as Exhibit E.

33.    The Handbook contained the Vacation policy. A true and accurate copy of the Vacation policy with relevant amendment is attached hereto as Exhibit F.

34.    Both the Attendance policy and the Vacation policy require advance notice of an employee's desire to use either Scheduled Time Off or vacation time.

35.    Mr. Giles never requested use of vacation or Scheduled Time Off to

cover the January 5, 2006 or January 6, 2006 absences.

36.    Mr. Giles' leave of absence in December 2005 was not a factor in the decision to terminate his employment.

37.    Pursuant to the Attendance policy, employees with 9 points or more are subject to termination. In the period between implementation of the Attendance policy on July 18, 2005 and Plaintiff's termination in January 2006, MBCI terminated 28 other employees for attendance related violations.

38.    MBCI routinely provides its eligible employees with time off from work under the FMLA. In the period from July 2005 to January 2007, MBCI approved approximately 115 employees for FMLA leave and denied only 22 requests.

39.    During the period from August 24, 2005 through and including December 16, 2005 Giles had 8 hours of scheduled time off available for his use. Giles never requested use of this scheduled time off. The Company did not automatically apply Mr. Giles scheduled time off to cover his absences during this period nor was it the Company's policy to do so.

40.    Of the 28 employees terminated under the Attendance policy, only 2 employees besides Giles had taken FMLA leave.

FURTHER AFFIANT SAYETH NOT.

PERRY EZELL

# Exhibit A

**MasterB**

c · a · b · i · n · e · t · s,

(Dome~ ~ Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com.

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | ✓ |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.42 |

Postmark Here

Sent To  *Ronnie Giles*
Street, Apt No.; or PO Box No.  *3006 Pheasant Ave.*
City, State, ZIP+4  *Opelika AL 36801*

**Via Certified Mail**

Monday, January 09, 2006

Ronnie Giles
3006 Pheasant Ave
Opelika, AL 36801

Ronnie:

This letter will confirm our discussion on Monday, January 9, 2006 at which I notified you of the company's decision to terminate your employment with MBCI effective January 9, 2006.

Maintenance of good attendance is a condition of employment. On July 15, 2005 you were issued a copy of the plant's attendance policy. You were informed at that time your employment would be terminated if you incurred a total of nine points as outlined by the attendance policy.

As of January 3, 2006 you had accumulated 5.5 points, subsequent to that you left early on January 4, 2006 which resulted in another point being assessed. You were then absent on January 5 and again on January 6 which resulted in your being assessed another three (3) points. This brought your point total to 9.5 points.

Therefore we have no choice but to terminate your employment effective January 9, 2006. With the termination of your employment, you are no longer authorized to return to MBCI's property.

You will be receiving information concerning continued health coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and other benefits you were receiving in a separate letter. Any pay due you will be paid during the next pay period.

Any questions regarding these issues please call me at (334) 887-5600.

Sincerely,

Perry Ezell, PHR
Human Resources Manager
cc: Personnel File

# Exhibit B



## Attendance Policy

Effective: July 18, 2005

## POLICY STATEMENT

Employees are expected to consistently report on time and be prepared to work. Employees are also expected to work all scheduled hours including overtime, if scheduled. The failure to maintain prompt and regular attendance adversely impacts the Company's production schedule.

This Attendance Policy sets forth the Company's expectations with respect to attendance and the consequences for failing to meet those expectations. Effective July 18, 2005, this Attendance Policy replaces all prior attendance policies including the Attendance Policy found in the Employee Handbook dated January 2003.

## CLOCKING PROCEDURES

Employees are required to clock in at the start of their shift and clock out at the end of their shift. Employees may not clock in earlier than 15 minutes prior to the start of their shift. Clocking entries for pay and/or overtime purposes that do not correspond with an employee's scheduled working hours require the approval of the employee's supervisor. Employees are required to immediately exit the premises upon clocking out.

Employees who are leaving Company property for any non-work related reason at any time during their scheduled shift are required to clock out before leaving and clock back in upon their return.

An employee who violates the clocking procedures may be subject to disciplinary action, up to and including termination.

## REPORTING AN ABSENCE -- CALL IN PROCEDURE

Employees who will be absent from work must call in and report their Absence by leaving a message at 334-502-1017. An Absence must be reported prior to the start of the employee's scheduled shift in order to avoid the assessment of an additional point. An employee must leave their name, department, supervisor's name, and reason on the message. The time of the message will be recorded. Absent an emergency, employees must personally leave the message on the Absence Line -- messages from third parties will not be accepted.

INIMAN2 913244v1

## ASSESSMENT OF ATTENDANCE POINTS

Employees will be assessed attendance points based upon the nature and amount of time missed from work as well as the ability to provide appropriate notification.

| Event | Attendance Points Assessed | Description |
|---|---|---|
| Late Arrival | .5 | Failing to be clocked in and be at the workstation by the scheduled starting time (defined as 2 hours or less). |
| | 1 | Failing to be clocked in and be at the workstation by the scheduled starting time (defined as more than 2 hours). |
| Early Departure/ Break in Workday | .5 | Either early departure or break in workday which is 2 hours or less. Any departure requires supervisor approval |
| | 1 | Either early departure or break in workday which is more than 2 hours. Any departure requires supervisor approval. |
| Absence | 2 | An employee who misses a scheduled shift. For consecutive days absent 1 point will be assessed for each consecutive day after the first. (See example below). |
| No Call | 1 | An employee who fails to notify the Company of an Absence prior to the start of the scheduled shift shall be assessed an additional point. |

"Scheduled starting time" is the time an employee is expected to report to work on the day in question.

"Scheduled shift" is all hours, including overtime, an employee is expected to work on the day in question.

"Point Reduction" - point values drop six (6) months from issue.

## RELATED CONSECUTIVE ABSENCES

The Company understands that, in limited circumstances, this policy could substantially impact an employee with otherwise good attendance. An employee who is required to miss consecutive work days due to their own medical condition or that of a dependent child shall only be assessed one (1) point per day following the initial absence. An employee shall only be entitled to this reduced point schedule provided the employee timely reports each day's absence on the Absence Line and the employee has exhausted all Scheduled Time Off and Vacation.

2

**Example:** Dependent child wakes up sick on Thursday morning. Employee timely calls in to report his/her absence. Dependent child remains sick on Friday and Saturday (employee is scheduled to work both days but is unable to work because the employee does not have dependent care). Employee must timely call in to report each day's absence. At the time of the dependent child's illness, the employee has 2 hours of Scheduled Time Off and 8 hours of vacation time remaining.

Under this scenario, Thursday counts as an Absence so the employee will be assessed 2 points. Friday's absence from work can be covered by Scheduled Time Off and vacation (assuming this employee is scheduled to work no more than 10 hours). The employee may be able to partially cover their absence from work on Saturday with the remaining hours of vacation, if any. If Saturday cannot be covered with vacation, the employee would be assessed one additional point provided he/she timely reports the Absence.

Total points assessed for these 3 days are either 2 or 3 points.

## DISCIPLINARY ACTION

An employee will be issued the following disciplinary action if they receive or exceed the points listed below:

> 3 Points = Verbal Warning
> 6 Points = Written Warning
> 9 Points = Termination of Employment

An employee's accountability for their attendance will be measured on a rolling six (6) month basis -- measured backward -- from the date of the most recent occurrence. It is each associate's responsibility to be aware of their own attendance record and their absence history, including their work record as defined by disciplinary action. In other words, it is ultimately the employee's and not the Company's responsibility to be aware of and keep track of attendance points. An employee may request a review of their attendance record at any time through the Human Resources Department. Disciplinary action will occur as required under this policy based on the Company's periodic monitoring of employees' attendance records.

## EXCUSED ABSENCES

The following represent excused Absences that will not count against an employee under the Attendance Policy:

> Approved Vacations
> Holidays
> Jury Duty

3

An Approved Leave of Absence
Subpoenaed as a witness in a court hearing

<u>Unless and until a leave of absence is approved by the Company, an employee is
required to call in and report their Absence for each day of work missed.</u>  Prior to
returning to work from a leave due to a medical condition that rendered an employee
unable to work, the employee must provide medical certification that they have been
released to return to work.

## SCHEDULED TIME OFF

The Company recognizes that on occasion an employee may not be able to avoid
taking time off from work due to medical appointments, family matters, school related
matters or similar functions.  Employees shall be provided with sixteen (16) hours of
excused unpaid Scheduled Time Off per calendar year.  Scheduled Time Off may be
used in increments of 2 hours.  Scheduled Time Off may only be used when the
employee has provided their supervisor with at least 24 hours advanced notification of
the need to take time off from work.  While the Company will make every effort to honor
an employee's request for Scheduled Time Off, there may be occasions where the
request must be denied due to production requirements.

Scheduled Time Off cannot be used to excuse an absence the day immediately before
or the day immediately after a paid holiday.  Scheduled Time Off does not have to be
used in conjunction with an approved leave of absence.

## CHRONIC ABSENTEEISM

This Attendance Policy attempts to establish a generally acceptable level of
absenteeism while allowing for some flexibility in the event of unforeseen
circumstances.  However, an employee who on average carries 5 or more attendance
points on their record for a period of 18 or more months has Chronic Absenteeism.  The
Company will work with such an employee to improve their overall attendance record.
However, an employee who is unable or unwilling to improve their overall attendance
record will be subject to termination of employment.

It is not good enough to simply avoid being assessed 9 points under this Attendance
Policy.  In other words, employees who consistently carry 5 or more points are either
missing a substantial amount of production time and/or failing to properly notify the
Company of their Absence and/or Early Departure on a regular basis.  Such conduct
and behavior is unacceptable and will not be tolerated by the Company.

## PERFECT ATTENDANCE AWARD

An employee who maintains perfect attendance for a complete calendar year
(January 1 through December 31) will be eligible to receive the Perfect Attendance
Award.  Perfect attendance is defined as not having received any attendance points for

4

the duration of the calendar year.  The Perfect Attendance Award will be paid out as follows:

| | |
|---|---|
| 1 year | $100 |
| 2 consecutive years | $125 |
| 3 consecutive years | $150 |
| 4 consecutive years | $200 |
| 5 – 9 consecutive years | $250 |
| 10 or more consecutive years | $300 |

**Parking Spot:**  The ten (10) associates with the longest period of perfect attendance will be given an assigned parking place.  Any break in perfect attendance will remove you from the assigned parking spot immediately upon recording of the absence.

## EXAMPLE OF ASSESSMENT OF ATTENDANCE POINTS

| Date | Occurrence | Attendance Points Assessed | Point Total |
|------|-----------|---------------------------|-------------|
| February 15, 2005 | Late Arrival (2 hours or less) | .5 | .5 |
| March 10, 2005 | Absence with Call-In | 2 | 2.5 |
| April 5, 2005 | Early Departure (more than 2 hours) | 1 | 3.5 |
| May 6, 2005 | Scheduled Time Off | 0 | 3.5 |

Employee, who is scheduled to work 6:00 a.m. to 3:00 p.m., wants to attend a school-related function for their child. Employee provides 24 hours advanced notice and supervisor approves (24 hour advanced notification requires notice prior to the start of the shift on May 5, 2005). Employee misses first 4 hours of work and uses Scheduled Time Off to cover.

| Date | Occurrence | Attendance Points Assessed | Point Total |
|------|-----------|---------------------------|-------------|
| August 12, 2005 | Absence without Call-In | 3 | 6.5 |
| August 15, 2005 | Employee gains back points assessed based on six (6) month basis measured backwards from February 15, 2005 | - .5 | 6.0 |
| August 15, 2005 | Early Departure (more than 2 hours) | 1 | 7.0 |

On August 12, 2005, employee has been assessed more than 6 points and should receive a written warning. However, before the Company could meet with the employee there was an additional incident. The additional points stand since it is the employee's responsibility to be aware of their overall attendance record. The employee is now an incident away from termination of employment. Any additional time missed from work will require planning and the use of Scheduled Time Off.

| Date | Occurrence | Attendance Points Assessed | Point Total |
|------|-----------|---------------------------|-------------|
| September 10, 2005 | Employee gains back points assessed on March 10, 2005 | - 2 | 5.0 |
| October 5, 2005 | Employee gains back points assessed on April 5, 2005 | - 1 | 4.0 |
| November 15, 2005 | Scheduled Time Off | 0 | 4.0 |

Employee timely uses 2 hours of scheduled time off to cover a doctor's appointment.

| Date | Occurrence | Attendance Points Assessed | Point Total |
|------|-----------|---------------------------|-------------|
| December 31, 2005 | Employee completes year with 2 hours of unpaid Scheduled Time Off, which this time does not carryover. | | |
| | | | |

6

| Date | Occurrence | Attendance Points Assessed | Point Total |
|------|-----------|---------------------------|-------------|
| January 1, 2006 | Employee starts the year with 4.0 points and 16 hours of unpaid Scheduled Time Off. | | |
| April 6, 2006 | Absence with Call-In | 2 | 6.0 |
| April 7, 2006 | Absence covered with Scheduled Time Off (approved 24 hr advance) | 0 | 6.0 |
| April 8, 2006 | Absence covered with Scheduled Time Off (approved 24 hr advance) | 0 | 6.0 |
| Employee missed 3 consecutive days of work due to their own medical condition. At the time, the employee had 16 hours of Scheduled Time Off but no remaining vacation time. Employee is assessed 2 points for the first day's Absence on April 6. No points are assessed for the Absence on April 7 & 8 due to the employee's ability to cover this absence with Scheduled Time Off (assuming an 8 hour Scheduled Shift). | | | |
| April 11, 2006 | Absence with no call in | 3 | 9.0 |
| Employee will be notified of the termination of their employment for violation of the Attendance Policy. | | | |

An employee who is able to cover all time missed from work in a calendar year with Scheduled Time Off (i.e., no attendance points are assessed for the entire calendar year) qualifies for the Perfect Attendance Award. An employee with perfect attendance in 2005 will receive $100 (less tax) on payroll check in January 2006. If the employee has perfect attendance for a second consecutive year, the employee will receive $125 (less tax) in January 2007.

7