IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE GILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:06-cv-528-WKW |
| | ) | (WO) |
| MASTERBRAND CABINETS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER ON PRETRIAL HEARING</u>**

A pretrial hearing was held in this case on July 18, 2007, wherein the following proceedings were held and actions taken:

1. <u>PARTIES AND TRIAL COUNSEL</u>:

   Plaintiff Ronnie Giles.
   Counsel:     David R. Arendall
   　　　　　　Allen D. Arnold
   　　　　　　Arendall & Associates
   　　　　　　2018 Morris Avenue, Suite 300
   　　　　　　Birmingham, Alabama  35203

   Defendant MasterBrand Cabinets, Inc.
   Counsel:     Mark J. Romaniuk, 15255-49
   　　　　　　Kelley Bertoux Creveling, 19309-49
   　　　　　　300 North Meridian Street, Suite 2700
   　　　　　　Indianapolis, Indiana  46204

   <u>COUNSEL APPEARING AT PRETRIAL HEARING</u>

   For Plaintiff:     David R. Arendall
   　　　　　　　　Allen D. Arnold
   For Defendant:   Mark J. Romaniuk
   　　　　　　　　Kelley Bertoux Creveling

2.	JURISDICTION AND VENUE:

All actions and events at issue in this suit occurred in Auburn, Lee County, Alabama making venue in this Court appropriate.  The suit arises under the Family and Medical Leave Act.

3.	PLEADINGS:  the following pleadings and amendments were allowed:

Currently pending before the Court are the Defendant's Motion for Summary Judgment and the Defendant's Motion to Dismiss Plaintiff's Claim for Emotional Damages.

4.	CONTENTIONS OF THE PARTIES:

(a)	The plaintiff(s):	Plaintiff asserts his sole claim under the Family and Medical Leave Act for a retaliatory termination.  Defendant admits that Plaintiff was approved for Family and Medical Leave from December 19, 2005 through and including January 2, 2006.  MBCI also admits that Plaintiff's employment was terminated on Monday, January 9, 2006.  Defendant admits that Plaintiff was approved for Family and Medical Leave from December 19, 2005 through and including January 2, 2006.  MBCI also admits that Plaintiff's employment was terminated on Monday, January 9, 2006.

Upon learning that Plaintiff would be missing work again on January 3, 2006, so soon after his FMLA absence, Oleinick told Plaintiff "we're in the same fix as we were before."  Originally, Defendant asserted that Mr. Ezell and Mr. Oleinick are the persons making the decisions regarding disciplinary actions, including Plaintiff's termination.  However, Defendant backtracked and now claims Mr. Olenick did not have the authority to terminate Plaintiff.  Plaintiff was forced to miss work for an illness following his FMLA leave.  Defendant's

contention that Plaintiff failed to follow policy regarding reporting his illness and seeking vacation pay are without merit. Despite having available vacation days, personal days, and sick days, Defendant willfully violated its own attendance and vacation policies when it terminated Plaintiff's employment.

As a result of Defendant's action, Plaintiff is seeking all available damages provided under the FMLA, including back pay and benefits, liquidated damages, attorneys fees and costs, and any equitable relief, including an injunction, that the Court deems the Plaintiff may be entitled to in order to make him whole.

(b)     The defendant(s):     Plaintiff Ronnie Giles was employed by MasterBrand Cabinets, Inc. ("MBCI") until January 2006 when he accumulated excessive points in violation of the established attendance policy. MBCI implemented its attendance policy on July 18, 2005. Giles received a copy of the policy on July 15, 2005. MBCI also had in place a vacation policy contained in the Employee Handbook. Giles received the Employee Handbook in October 2004.

As of December 16, 2005, Giles had accumulated 5.5 points due to prior absences, tardies and/or leaving work early. During the period from August 24, 2005 through and including December 16, 2005 Giles had 8 hours of scheduled time off available for his use. Giles never requested use of this scheduled time off. The Company did not automatically apply Mr. Giles scheduled time off to cover his absences during this period nor was it the Company's policy to do so. Giles was assessed points under the Attendance policy despite the existence of

available scheduled time off. Giles does not dispute that the points he incurred through December 16, 2005 were properly assessed.

Giles was on an approved leave of absence under the FMLA for a shoulder injury in late December 2005 and for which he received no points.

Giles returned to work on January 3, 2006. On January 4, 2006, Giles worked 2.1 hours before leaving work because he felt sick. Pursuant to the attendance policy, Giles incurred 1 point for leaving work early on January 4, 2006. This partial absence brought Giles to 6.5 points under the attendance policy. Giles concurs that the assessment of this point was proper under the attendance policy. Giles next called off work the following day, January 5, 2006, for which he was assessed 2 points under the attendance policy. Giles again called off work January 6, 2006, for which MBCI assessed 1 point under the attendance policy.

As a result of Giles' absences on January 4, 5, and 6, 2006, MBCI determined that Giles had reached 9.5 points and was thus subject to termination under the attendance policy. Although Giles had available scheduled time off and/or vacation time to cover his absences on January 4, 5, and 6, 2006, he did not request use of that time to cover his absences. MBCI does not automatically apply an employee's available scheduled time off or vacation time to cover an employee's absences and thus avoid the accumulation of points under the attendance policy. The termination of Giles' employment was the result of the routine application of the Company's attendance and vacation policies. MBCI did not terminate Giles' employment in retaliation for taking FMLA.

Giles received a copy of the policy on July 15, 2005. MBCI also had in place a vacation policy contained in the Employee Handbook. Giles received the Employee Handbook in October 2004.

As of December 16, 2005, Giles had accumulated 5.5 points due to prior absences, tardies and/or leaving work early. During the period from August 24, 2005 through and including December 16, 2005 Giles had 8 hours of scheduled time off available for his use. Giles never requested use of this scheduled time off. The Company did not automatically apply Mr. Giles scheduled time off to cover his absences during this period nor was it the Company's policy to do so. Giles was assessed points under the Attendance policy despite the existence of available scheduled time off. Giles does not dispute that the points he incurred through December 16, 2005 were properly assessed.

Giles was on an approved leave of absence under the FMLA for a shoulder injury in late December 2005 and for which he received no points.

Giles returned to work on January 3, 2006. On January 4, 2006, Giles worked 2.1 hours before leaving work because he felt sick. Pursuant to the attendance policy, Giles incurred 1 point for leaving work early on January 4, 2006. This partial absence brought Giles to 6.5 points under the attendance policy. Giles concurs that the assessment of this point was proper under the attendance policy. Giles next called off work the following day, January 5, 2006, for which he was assessed 2 points under the attendance policy. Giles again called off work January 6, 2006, for which MBCI assessed 1 point under the attendance policy.

As a result of Giles' absences on January 4, 5, and 6, 2006, MBCI determined that Giles had reached 9.5 points and was thus subject to termination under the attendance policy. Although Giles had available scheduled time off and/or vacation time to cover his absences on January 4, 5, and 6, 2006, he did not request use of that time to cover his absences. MBCI does not automatically apply an employee's available scheduled time off or vacation time to cover an employee's absences and thus avoid the accumulation of points under the attendance policy. The termination of Giles' employment was the result of the routine application of the Company's attendance and vacation policies. MBCI did not terminate Giles' employment in retaliation for taking FMLA.

Plaintiff is not entitled to any relief under the FMLA.

5.  STIPULATIONS BY AND BETWEEN THE PARTIES:

(a)  MBCI is a covered employer within the meaning of the Family and Medical Leave Act.

(b)  On July 18, 2005 MBCI implemented a new attendance policy. MBCI gave Giles a copy of the policy on July 15, 2005.

(c)  At various times between July 18, 2005 and December 15, 2005, Giles was absent, tardy or left work early resulting in the accumulation of 5.5 points as of December 16, 2005. Giles' attendance history is as follows:

| Date | Nature of Violation | Point(s) Assessed |
|---|---|---|
| August 24, 2005 | tardy | .5 |
| September 1, 2005 | absent | 2.0 |
| September 8, 2005 | tardy | .5 |
| December 8, 2005 | absent | 2.0 |
| December 16, 2005 | left early | .5 |
| **TOTAL:** |  | **5.5** |

       (d)    MBCI assessed points for Giles' absences through and including December 16, 2005.

       (e)    Giles was on an approved leave of absence for which he received no points for a two week period beginning December 19, 2005.

       (f)    Giles returned to full duty work on January 3, 2006.

    (g)  Giles worked 2.1 hours on January 4, 2006 before leaving work because he felt sick.

    (h)  Giles incurred 1 point for leaving work early on January 4, 2006.

    (i)  Giles called off work on January 5, 2006 reporting that he was running a fever and would not be in.

    (j)  Giles called off work on January 6, 2006 reporting that he would not be in.

    (k)  MBCI assessed 1 point for the absence on January 6, 2006.

    (l)  Giles did not qualify for FMLA for his absences on January 4, 5 and 6, 2006.

    (m)  MBCI notified Giles of the termination of his employment on Monday, January 9, 2006.

    (n)  Giles' W-2 income for 2005 from MBCI was $26,516.81. His W-2 income from MBCI in 2006 was $1,237.77.

    (o)  In addition, since the termination of his employment at MBCI Giles has worked for Weidmann Plastics Technology NA, Inc. In 2006 Giles' W-2 income through Weidmann Plastics was $20,381.71. The parties will stipulate to Plaintiff's year to date income with Weidmann Plastics through the date of trial.

(p) The parties stipulate to the admission of the following documents into evidence at trial of this matter: (1) MasterBrand's Attendance Policy Effective 7/18/05, (2) Associate Receipt of Attendance Policy effective 7/18/05, (3) Vacation Policy from the Employee Handbook, (4) Employee Acknowledgement and Receipt of Employee Handbook, (5) 12/19/05 Memo to All MBCI - Auburn Associates from P. Ezell re: Vacation Policy Revision (Effective 1/1/06), (6) Punch Detail and Points Detail reports of Plaintiff's attendance, (7) All documents pertaining to Plaintiff's Request for Leave of Absence, (8) Hughston Clinic Release to Work Slip dated 1/3/05 (9) E-mail detailing employees who called off work 1/5/06, (10) E-mail detailing employees who called off work 1/6/06, (11) Employee written warning notice dated 1/6/06, (12) 1/9/06 Termination Letter, (13) All documents showing income earned by Plaintiff from Weidman Plastics Technology North America, Inc., (14) All documents showing income earned by Plaintiff from MasterBrand Cabinets, Inc., (15) Employee Handbook.

6. ORDER OF THE COURT

It is hereby ORDERED that:

1. The trial in this case, which is to last 2-3 day, will commence on August 20, 2007, at 10:00 a.m., at the federal courthouse in Opelika, Alabama;

2. A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term.

3.  The parties shall file any requested voir dire questions, fully briefed motions in limine, proposed jury instructions, and proposed verdict forms with legal citations thereon, on or before August 6, 2007.

4.  The parties are not required to file trial briefs, but if they choose to do so, the briefs shall be filed on or before August 13, 2007.

5.  Each party shall submit at the time of trial, for use by the court (the judge, law clerk, and courtroom deputy), four (4) copies of the witness list, exhibit list, and notebook of all pre-marked exhibits, including and identifying those to which objections are outstanding.

6.  Each party shall submit one copy of the exhibits which are not objected to for each juror and one copy for opposing counsel (if not prepared jointly).  The parties are encouraged to jointly develop juror notebooks.  The court requires four (4) copies for its use.

7.  The parties shall review and comply with the Middle District of Alabama's Order on the E-Government Act.

8.  All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order (Doc. # 21) entered by the court on September 20, 2006.

9.  The parties have indicated that there are no other disputes at this time.  All understandings, agreements, deadlines, and stipulations contained in this Order shall be binding on all parties unless modified by the court.

DONE this 26th day of July, 2007.

/s/ W. Keith Watkins

UNITED STATES DISTRICT JUDGE