# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **RONNIE GILES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CAUSE NO.  3:06 CV 528-WKW** |
| | ) | |
| **MASTERBRAND CABINETS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES

Pursuant to this Court's Order dated December 12, 2007, Defendant, MasterBrand Cabinets, Inc. ("MasterBrand"), respectfully submits this brief in opposition to Plaintiff Ronnie Giles's ("Plaintiff's") Petition for Attorneys' Fees (Doc. No. 84).  Plaintiff seeks an award of over $80,000 in attorneys fees based on proposed hourly rates that are far in excess of the prevailing rates within the local community and based on vague and excessive time records rife with errors.  Because Plaintiff's request for attorneys fees lacks reliable evidentiary support, any award of attorneys' fees to Plaintiff's counsel should be substantially reduced from what Plaintiff's counsel have proposed.

## ARGUMENT

An award of reasonable attorneys' fees under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617(a)(3) is calculated first by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citation omitted); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 216 (D. Mass. 2004).  "This 'lodestar' may then be adjusted for the result obtained."  *Am. Civil Liberties Union*, 168 F. 3d at 427.  The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  *Id*;

*Barrett v. Detroit Heading, LLC*, 2007 WL 1655434, * 8 (E.D. Mich. June 7, 2007) (quoting *Blum*

*v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Mogilevsky*, 311 F. Supp. 2d at 216 (same)).

I.      **The Amount Of Time For Which Plaintiff's Counsel Seeks Fees Lacks Evidentiary
        Support And Is Unreasonable**

        Plaintiff's counsel seek attorneys fees for David Arendall based on 143.8 hours

worked and for Allen Arnold based on 111.4 hours work.  (*See* Exhibits L and M To Plaintiff's

Petition For Attorney's Fees and Costs (Doc. Nos. 83 & 84) (hereafter "Exh. L and M to Pl.'s

Pet.")).  However, the amount of time that Plaintiff's counsel propose should be used in

calculating the "lodestar" is exaggerated with erroneous, inflated, vague and improper entries.

      A.      **Plaintiff's Counsels' Billing Records Are Unreliable And Fail To Demonstrate
        "Billing Judgment"**

        The Eleventh Circuit has made clear that fee applicants must exercise "billing

judgment." *Am. Civil Liberties Union*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S.

424, 434 (1983)).  This means that they must exclude from their fee applications "excessive,

redundant, or otherwise unnecessary [hours]," which are hours "that would be unreasonable to bill

to a client and therefore to one's adversary irrespective of the skill, reputation or experience of

counsel." *Id.*  If a fee application fails to exercise billing judgment, then "courts are obligated to

do it for them, to cut the amount of hours for which payment is sought, pruning out those that are

'excessive, redundant, or otherwise unnecessary.'" *Id.  See also Downey v. Strain*, 2006 WL

1581234, *2 (E.D. La. June 5, 2006) (holding in ruling on a FMLA fee petition that "[t]he district

court must eliminate excessive or duplicative time") (citing *Watkins v. Fordice*, 7 F.3d 453, 457

(5th Cir. 1993) and *Hensley*, 461 U.S. at 433-34).

        Here, Plaintiff's counsel's billing records demonstrate a lack of billing judgment.

For instance, Plaintiff's counsels' billing records include the <u>same</u> <u>entries</u> <u>more</u> <u>than</u> <u>once</u>,

meaning that their fee request is based in part on multiple billings for the same activity.  Examples

of duplicative billing include the following:

- Plaintiff *twice* seeks fees for correspondence to Defendant's counsel regarding deposition dates on June 20, 2007 and June 25, 2007. *See* Exh. F To Pl.'s Pet. (6/20/2007, Allen, .2 hours; 6/25/07 Allen, .3 hours for communication to Defendant "regarding deposition dates").

- Plaintiff *twice* seeks fees for drafting a Motion to Compel, both entries on March 15, 2007. See Exh. F to Pl. Pet. (3/15/07, Allen, Motion to Compel, 1.1 hours; 3/15/07 Allen, Motion to Compel; phone call with Ronnie; settlement letter, 1.3 hours).[1]

- Plaintiff *twice* seeks fees for Attorney Allen Arnold completing Pre-Trial Contentions and a Deposition Notice, and *another time* seeks fees for Attorney David Arendall's completion of the Deposition Notice, all on July 11 and 12, 2007. See Exhs. G and H to Pl.'s Pet. (7/11/07, Allen, Correspondence - Email Pre-Trial Contentions and Deposition Notice, .3 hours; 7/12/07, Allen, Pre-Trial Order, Contentions & Depo Notice, .6 hours; 7/11/07, David, Deposition - Depo Notice to Defendant, .2 hours).[2]

No more than one entry for each of the above tasks should be charged. Accordingly, MasterBrand requests that the Court reduce Allen Arnold's hours expended be reduced by 2.5 hours.

---

[1]  This draft Motion, which was never filed, totaled approximately five paragraphs and cited no law. It therefore does not appear to be the product of 2.4 hours of reasonably expended work as Plaintiff's counsel claim.

[2]  In the event that Plaintiff argues that such entries merely appear duplicative but in fact represent work appropriately expended, the Court should reject such argument. It is plaintiff's burden to provide billing records that permit the Court to determine the appropriateness of time expended. *Mogilevsky*, 311 F. Supp. 2d at 218. Accordingly, any failure to properly describe the above-itemized activities should also result in the reduction of apparently duplicative entries from the fee award in this case. *Id.* ("Attorneys seeking fee awards must provide detailed contemporaneous time records, to avoid a substantial reduction in any award, or, in egregious cases, disallowance.") (internal citations omitted).

3

In addition, many of the time entries submitted by Plaintiff's counsel are erroneous or excessive on their face. Examples of such time entries include the following:

- 11/13/06, Allen, Phone with Client - returned call, both numbers, .2 hours. See Exh. F to Pl. Pet.

- 1/29/07, Allen, phone - call to Kelley Creveling, left message, .2 hours. See Exh. F to Pl. Pet.

- 2/21/07, Allen, phone - Set up deposition date with DEF, .2 hours. See Exh. F to Pl. Pet.

- 2/22/07, Allen, Email Defense Attorney - re: SJ deadline, .2 hours. See Exh. F to Pl. Pet.

- 4/3/07, Allen, Email Defense Attorney - settlement offer, .2 hours. See Exh. F to Pl. Pet.

- 4/3/07, Allen, Email Defense Attorney - Email; regarding settlement, .2 hours. See Exh. F to Pl. Pet.

- 4/4/07, Allen, Deposition Preparation - Giles; look up of client, 2.3 hours. See Exh. F to Pl. Pet.

- 4/10/07, Allen, Email Defense Attorney - withdrawing offer, .2 hours. See Exh. F to Pl. Pet.

- 4/23/07, Allen, Email Defense Attorney - approving Notice of Settlement Conference, .2 hours. See Exh. F to Pl. Pet.

- 7/11/07, Allen, Correspondence - Email Pre-Trial Contentions and Deposition Notice, .3 hours. See Exh. H to Pl. Pet.

- 7/11/07, Allen, Trial Preparation - W&E List; efiling, 1.4 hours. See Exh. H to Pl. Pet.

4

- 7/12/07, Allen, PreTrial Order - email changes to DEF counsel, .4 hours.  See Ex. H. to Pl. Pet.

- 9/12/07, David, Letter to Defense Attorneys - Letter to Defendant, .2 hours.  See Ex. J to Pl. Pet.[3]

Entries such as these demonstrate a tendency to inflate the amount of time required to perform even basic and routine tasks, such as leaving phone messages and sending emails.  *See, e.g., Barrett*, 2007 WL 1655434, at *10 (reducing numerous entries charging .2 for leaving voicemails).  Such inflation, such as charging .2 hours - *twelve* minutes - or more for single-line emails, leaving phone messages, and communications never received by defendant, or charging for administrative tasks such as efiling, undermines the confidence that this Court should place in Plaintiff's counsels' account of the amount of time they expended on this case.  For example, Allen Arnold's email to Defendant's counsel regarding the Pre-Trial Order for which Plaintiff seeks fees for .4 hours of work is one line.[4]  Arnold's February 22, 2007 email to MasterBrand's counsel regarding the summary judgment deadline was equally brief.[5]  Indeed, in light of the duplicative, erroneous, and excessive entries contained in Plaintiff's counsels' billing records and the lack of reliable evidentiary support for Plaintiff's counsel's fee request, the overall amount of time for which Plaintiff's counsel is awarded fees should be subject to an across-the-board reduction.

---

[3]  Masterbrand requests that David Arendall's hours expended be reduced by .1 and Allen Arnold's hours expended be reduced by no less than 2.7 hours for the above excessive entries listed.

[4]  This email reads only:  "Please provide the bates labels for all stipulated exhibits so we don't get in a dispute over 'x' when we actually mean 'y.'"

[5]  This email was a 2-line, 2-sentence email responding to a 2-line, 2-sentence email from Defendant's counsel and simply informed Defendant's counsel that Plaintiff did not oppose a motion for an enlargement of the summary judgment deadline.

**B.**    **Plaintiff's Counsel Seeks Fees For Time That Must Be Excluded**

Plaintiff's counsels' fee request is also objectionable because they seek fees for certain categories of time that should be excluded altogether, including time spent on unsuccessful claims, time spent on frivolous matters, and under-documented travel time.

**1.**    **Time Spent On Unsuccessful And Frivolous Claims And Theories**

It is well settled that Plaintiff's counsel may not obtain attorneys fees for time that they spent pursuing unsuccessful claims. *See, e.g.*,  *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (stating that a court "must deduct time spent on discrete and unsuccessful claims"); *see also Hensley*, 461 U.S. at 435.

Plaintiff originally advanced in his Complaint, along with the FMLA retaliation claim that eventually proceeded to trial, a substantive interference claim under the FMLA, alleging that MBCI violated his FMLA rights by refusing to grant him FMLA time for his absences in January 2006.  (See Docket No. 1.)  On its face, the substantive claim was baseless.  The facts pled in the Complaint demonstrated that the condition for which Plaintiff was absent from work in January 2006, plainly could not have amounted to a serious health condition within the meaning of the FMLA.  29 C.F.R. § 825.114; *Russell v. North Broward Hosp.*, 346 F.3d 1335, 1343 (11th Cir. 2003).  Plaintiff's Amended Complaint did not correct such oversight.  (See Docket Nos. 9 & 11.) Plaintiff quickly retreated from his interference claim following Defendant's submission of its Answer and Motion to Dismiss.  (See Docket Nos. 12 & 16.)  The Court ultimately dismissed Plaintiff's interference claim.

Plaintiff also frivolously sought mental distress damages under the FMLA, a form of relief that the FMLA plainly does not permit.  29 U.S.C. § 2617(a).  Plaintiff's request for damages relating to his mental distress was advanced in his Amended Complaint.  (See Docket Nos. 9-11.)  Defendant was again required to submit to the Court a motion to dismiss another of

6

Plaintiff's frivolous claims, and again, Plaintiff retreated from this claim when Defendant exposed

the unchallenged and plain law controlling damages in the FMLA context.  (See Docket Nos. 41,

43, 45.)  The entries relating to this claim that must be stricken include the following:

| Date | Attorney | Task | Hours | Fee |
|------|----------|------|-------|-----|
| 1/18/06 | David | Client conference | 1.0 | $350.00 |
| 6/6/06 | David | Draft of complaint; letter to client | 1.2 | $420.00 |
| 8/9/06 | David | Defendant's Motion; Letter to client | .4 | $140.00 |
| 8/14/06 | David | Receipt and review email from client | .1 | $35.00 |
| 8/16/06 | David | Response to Defendant's Motion to Dismiss | .3 | $150.00 |
| 7/13/07 | Allen | Motion to dismiis [sic] | .2 | $47.00 |

That Plaintiff could not pursue either his FMLA interference claim or his claim for

damages relating to mental anguish was obvious under the plain terms of the statutory and

regulatory law and case law of this Circuit.  Defendant has shown restraint in declining to seek its

own attorney fees under 28 U.S.C. § 1927 for the cost of responding to such frivolous claims in its

Answer, Motion to Dismiss Count One, and Motion to Dismiss Plaintiff's Claim for Emotional

Stress Damages.  (See Docket Nos. 12, 41.)  Surely, Defendant should not be required to pay both

Plaintiff's and its own fees in defending such frivolously-brought claims.  Accordingly, time that

Plaintiff's Counsel spent pursuing unsuccessful claims must be excluded from any award of

reasonable attorneys fees.  *Schmidt v. Beverly Health and Rehab. Servs., Inc.*, 962 F.Supp. 1379

(D. Kan. 1997) (plaintiff was not entitled to recover attorneys' fees on FMLA claim dismissed for

failure to state a claim); *Baumgarden v. Challenge Unlimited, Inc.*, 2006 WL 539514, * 4 (S.D. Ill.

Mar. 2, 2006) (declining to award fees on constructive discharge FMLA claim on which plaintiff

was unsuccessful, despite success of plaintiff's substantive FMLA claim).

Defendant recognizes that some of these disputed entries may refer to time spent on

Plaintiff's FMLA retaliation claim.  Plaintiff's counsel, however, has failed to differentiate his time,

which he is required to do, and the Court and Defendant should not be required to guess as to how

much time described in the above entries was devoted to Plaintiff's frivolous and unsuccessful

claims.  Accordingly, Plaintiff's fee request should be reduced by a total of at least 3.2 hours for time spent on Plaintiff's unsuccessful and frivolous claims.

### 2.    Time Spent On Frivolous Motions

It is also common sense that Plaintiff's counsel may not obtain attorneys' fees for time spent pursuing matters that were not only unsuccessful but also frivolous.  (*See* Docket Nos. 34, 35, 73.)  For example, Plaintiff's Motion to Strike MasterBrand's Evidentiary Submissions in Support of its Reply Brief on Summary Judgment was entirely frivolous, as such submissions were clearly permitted by the Federal and the Local Rules.  For this reason, perhaps, the Court denied Plaintiff's Motion to Strike in a short Order.  (See Docket Nos. 34 & 35.)[6]  Also frivolous was Plaintiff's written Rule 50 Motion for Judgment as a Matter of Law.  (Docket No. 73.)  Plaintiff's Motion alleged as undisputed factual allegations that clearly were disputed, such as statements made by Jon Oleinik and the proper application of MasterBrand's Attendance Policy.  *Id.*[7]  Plaintiff should not be permitted to obtain attorneys fees for filing frivolous motions and objections prior to trial, and any time spent on these frivolous matters should be excluded from any award of attorneys' fees.  Again, as a matter of public policy, MasterBrand should not be expected to pay Plaintiff's attorneys fees for filing the frivolous motions as well as their own defense costs in defending against these frivolous motions.  Under such a scenario, MasterBrand would pay twice for work that added no value to the presentation of the issues at trial.  Accordingly, Allen Arnold's fee request should be reduced by approximately 5.0 hours, the time MasterBrand estimates he spent on the frivolous Motion to Strike and Rule 50 Motion.

---

[6]   Plaintiff seeks fees for Allen Arendall for approximately 2.3 hours devoted to the Motion to Strike.  See Exh. F to Pl. Pet.

[7]   Plaintiff has not submitted an itemized record of the time expended on his Rule 50 Motion.  Because Plaintiff has not indicated that he has exercised any billing judgment in writing off such time, Defendant can only suppose that such time was added to the dozens of hours of unspecified "trial preparation" included in Plaintiff's fee requests.

3.    **Travel Time**

Plaintiff's counsel also seeks fees for travel time.  However, because the billing entries for this travel time are inadequate, this time must be excluded.  Counsel may not pursue fees for travel time where he has failed to meet his burden of showing a lack of available and qualified local counsel.  *Brother v. Int'l Beach Club Condominium Ass'n, Inc.*, 2005 WL 1027240, * 5 (M.D. Fla. April 28, 2005) (denying attorney fee request for travel time; "[t]ravel time is not properly visited on one's adversary, absent a showing of a lack of qualified local counsel"). Plaintiff's only evidence of a lack of qualified local counsel is a copy of the attorney advertisement section of an Opelika phonebook.  Such a half-hearted attempt does not satisfy Plaintiff's burden to show that the fees he seeks are reasonable.  Even if travel time fees were appropriate in this case - which they are not - Plaintiff's counsel fail to explain what, if any work, they did during this travel time.  *See, e.g.*, *Hearn v. General Electric Company*, No. 93-T-424-S, 1996 WL 937034 (M.D. Ala. Sept. 12, 1996) (excluding 19.5 hours of travel time sought by plaintiff's counsel; plaintiff's counsel could have been "working on another case or merely sleeping during an all night flight" and shouldn't be compensated for such time).[8]  MasterBrand's counsel does not charge MasterBrand their own travel time.  In fact, in the present day, it is debatable whether there exists any "travel time" during which an individual is incapable of performing case-related or other tasks, such as talking on a cellular phone, checking emails, etc.

---

[8]    Even where courts have found that plaintiffs have met their burden to show payment for travel time is reasonable, counsel may only charge half a reasonable hourly rate for such time.  *Kenny v. Perdue*, 454 F. Supp. 2d 1260, 1284 (N.D. Ga. 2006) (travel time should be compensated at 1/2 a reasonable hourly rate); *Doe v. Mann*, 2007 WL 3286697, *4 (M.D. Fla. Nov. 5, 2007) (reducing a fee award by half for fees incurred during travel time).  *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 2007 WL 2948581, *3 (M.D. Fla. Oct. 10, 2007) (reducing fee award by half for travel time; despite evidence that plaintiff's counsel worked during the travel time charged, the records did not evidence how much time was spent working and how much time was mere travel).

Moreover, Plaintiff's counsel listed travel time in "block" billing entries that make it impossible to know the actual amount of time spent traveling. See Exh. G to Pl. Pet. It is hardly credible for Plaintiff's counsel to argue an entitlement to be paid any full hourly fee for pure travel time during which they did not perform any work. Nor is it appropriate for Defendant or the Court to try to discern the amount of time Plaintiff's counsel spent in transit. Accordingly, David Arendall's fee request should be reduced by an additional 21.00 hours for travel time on July 18, 2007 and August 19, 2007.[9]

### 4.     Vague Entries For "Trial Preparation"

Finally, Plaintiff's counsel has sought compensation for dozens of hours in unspecified "Trial Preparation" that fails to meet the required level of specificity to permit Defendant or the Court to determine the reasonableness of such time. Plaintiff's counsel failed to offer even a general explanation of what kinds of activities were undertaken in the course of their trial preparation. Such entries include the following:

- 7/20/07, David, Trial Preparation - Trial Preparation, 1.50 hours. See Exh. G to Pl. Pet.

- 8/1/07, David, Trial preparation - Trial preparation, 1.2 hours. See Exh. G to Pl. Pet.

- 8/2/07, David, Trial preparation - Trial preparation, 1.5 hours. See Exh. G to Pl. Pet.

- 8/4/07, David, Trial Preparation - Trial Preparation; Motion, 3.0 hours. See Exh. G to Pl. Pet.

- 8/7/07, David, Trial Preparation - Trial Preparation, 2.1 hours. See Exh. G to Pl. Pet.

---

[9]   Masterbrand also notes that, despite Plaintiff's demonstrated willingness to charge for counsel's travel time, Plaintiff's counsel specifically itemized such time only in two billing entries, leaving Defendant and the Court merely to wonder whether Plaintiff included un-itemized travel time in his plethora of unspecified billings for "trial preparation" in the month prior to trial.

- 8/9/07, David, Trial Preparation - Trial preparation, 6.2 hours. See Exh. G to Pl. Pet.

- 8/12/07, David, Trial Preparation - Trial preparation, 4.0 hours. See Exh. G to Pl. Pet.

- 8/13/07, David, Trial Preparation - Trial preparation, 1.2 hours. See Exh. G to Pl. Pet.

- 8/14/07, David, Trial Preparation - Trial preparation; Phone with Defendant, 5.0 hours. See Exh. G to Pl. Pet.

- 8/15/07, David, Trial Preparation - Trial preparation, 6.5 hours. See Exh. G to Pl. Pet.

- 8/16/07, David, Witness Preparation - Trial preparation; Client conference, 9.0 hours. See Exh. G to Pl. Pet.

- 8/17/07, David, Trial Preparation - Trial preparation, 9.8 hours. See Exh. G to Pl. Pet.

- 8/18/07, David, Trial Preparation - Trial preparation, 13.5 hours. See Exh. G to Pl. Pet.

- 8/19/07, David, Trial Preparation - Travel; Client conference; trial preparation, 14.0 hours. See Exh. G to Pl. Pet.[10]

The above trial preparation entries constitute 78.5 hours, more than half of the 143.8 hours billed by Attorney Arendall in this case. As shown above, the unspecified entries for "trial preparation," are in many cases block-billed with other tasks and/or billed with no further explanation. Such vague and unreliable recordkeeping warrants an across the board reduction of 20% of the fees Plaintiff seeks for David Arendall's services. *Kenny v. Perdue*, 454 F. Supp. 2d 1260, 1274, 1286 (N.D. Ga. 2006) (Court took vague entries into account in reducing plaintiff's attorneys' fees by 15%) (citing *T.M. Park Ave. Assocs. v. Pataki*, 44 F. Supp. 2d 158, 169 (N.D.N.Y. 1999), *vacated on other grounds*, 214 F. 3d 344 (2d Cir. 2000) (reducing hours by 10% to account for insufficiently detailed records and another 10% to account for excessive hours), *Wilder v. Bernstein*, 975 F.Supp. 276, 286 (S.D.N.Y. 1997) (reducing lodestar by 10% to account for vague

---

[10]  Defendant has also asked that this entry be struck in section I.B.4 above as it also amounts to a block billing entry for travel time.

time entries), and *Meriwether v. Coughlin*, 727 F.Supp. 823, 827 (S.D.N.Y. 1989) (reducing fee request by 15% to account for vague entries)); *Am. Charities for Reasonable Fundraising Reg., Inc. v. Pinellas County*, 278 F. Supp. 2d 1301, 1318-19 (M.D. Fla. 2003) (reducing fees for vague entries); *Diamond Waste, Inc. v. Monroe County*, 908 F.Supp. 974, 975-77 (M.D. Ga. 1995); *Dunten v. Kibler*, 518 F.Supp. 1146, 1149 (D. Ga. 1981) (giving defendant the "benefit of the doubt" on fee award relating to plaintiff's vague time entries because the burden of proof rests on the plaintiff on his own motion for attorney fees).

## II.    The Hourly Rates Sought By Plaintiff's Counsel Are Contrary To The Evidence And Unreasonable

Regarding the hourly rate, which is the other component required for calculating the "lodestar" amount, the Eleventh Circuit has explained that it is also the fee applicant's burden to "supply [] the court with specific and detailed evidence from which the court can determine the reasonably hourly rate." *Am. Civil Liberties Union,* 168 F.3d at 427.  Plaintiff carries the heavy burden of demonstrating the reasonableness of the fees he seeks, including the reasonableness of hourly rates sought by his counsel:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates.  To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to - for convenience - as the prevailing market rate.

*Barrett*, 2007 WL 1655434 at * 8 (deciding plaintiff's fee petition in an FMLA case) (quoting *Blum*, 465 U.S. at 895-96 n.11).  "[W]hat constitutes a reasonabl[e] hourly rates is a finding of fact . . . ." *Am. Civil Liberties Union,* 168 F.3d at 436.

Plaintiff's counsels' claim for attorneys' fees is based on the following proposed hourly rates:

- David Arendall: $350 per hours for 2006, and $400 per hour for 2007.

- Allen Arnold: $200 per hour for 2006, and $235 per hour for 2007.

The evidence refutes Plaintiff's counsels' request that the court accept these as prevailing market rates. Even if the declarations and affidavits submitted by Plaintiff's counsel were uncontested, they would fail to establish as a matter of fact that these proposed rates are the prevailing rates within the relevant legal market or that the market will bear the large year over year rate increases sought by plaintiff's counsel.

As demonstrated by the affidavits submitted by MasterBrand, the prevailing hourly rates in the Auburn/Opelika and Montgomery areas for plaintiff's attorneys of similar experience pursuing cases such as this one are substantially lower than the rates proposed by Plaintiff's counsel. With this Brief in Opposition, MasterBrand has submitted the affidavits of two experienced litigators familiar with the local legal market and litigation in the Middle District: Christopher Weller of Capell & Howard, P.C. practicing in Montgomery, Alabama and William H Webster of Henry, Lyons & White, P.C. practicing in Montgomery, Opelika, and Auburn, Alabama. (*See* Affidavit of William H. Webster ("Webster Aff.") attached hereto as Exh. A, and Affidavit of Christopher Weller ("Weller Aff.") attached hereto as Exh. B). Both provide valuable insight into the prevailing hourly rates for employment litigation in the Auburn/Opelika and Montgomery areas. Weller believes that the fee range for experienced partners with thirty or more years of experience litigating employment cases similar to this case is $200.00 - $295.00 per hour, depending on the level of difficulty of the case, the risk assumed, and the amount of expertise required to prosecute the plaintiff's claims. (Weller Aff. ¶ 11.) He also believes that the prevailing rate for an associate with three years of experience would range between $125.00 - $175.00 per hour, depending on the same factors. *Id.* Both Mr. Weller and Mr. Webster believe that, in this matter, a reasonable hourly rate for Mr. Arendall would be no higher than $250.00 per

hour and a reasonable hourly rate for Arnold would be no higher than $150.00 per hour.  (Weller

Aff. ¶¶ 11, 15, 16; Webster Aff. ¶ 11.)

> **A.    The Relevant Legal Community For Determining A Reasonable Hourly Rate In This Case Is The Montgomery and Opelika Area**

Plaintiff's counsel have failed to submit any evidence of the prevailing rates within

the legal market relevant to this case.  It is well settled that "[a] reasonable hourly rate is the

prevailing market rate in the *relevant legal community* for similar services by lawyers of

reasonably comparable skills, experience, and reputation."  *Gay Lesbian Bisexual Alliance v.

Sessions*, 930 F.Supp. 1492, 1494 (M.D. Ala. 1996) (emphasis added).  "Establishing a claimed

market rate is the plaintiff's burden."  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th

Cir. 2000).

Generally, the "rate of attorney's fees is that of the place where the case is filed."

*Gay Lesbian Bisexual Alliance,* 930 F. Supp. at 1495; *see also Am. Civil Liberties Union*, 168 F.3d

at 437; *Downey*, 2006 WL 1581234 at * 2 (holding in an FMLA case that "[t]he relevant market

for purposes of determining the prevailing hourly billing rate to be paid in a fee award is the

community in which the district court sits") (citing *Scham v. Dist. Courts Trying Criminal Cases*,

148 F.3d 554, 558 (5th Cir. 1998)).  In exceptional cases, a court may look outside the local

market in determining an appropriate prevailing rate, but only if there is evidence that no attorneys

within the local market would have been willing or capable of handling the case.  *Gay Lesbian

Bisexual Alliance*, 930 F. Supp. at 1495 (concluding that the relevant legal market was Alabama as

a whole rather than Montgomery because it was "unlikely that there would be any attorneys in the

local market who would be willing to take the case and who would possess sufficient expertise in

the area of law involved"); *see also Am. Civil Liberties Union*, 168 F.3d at 437 ("If a fee applicant

desires to recover the non-local rates of an attorney who is not from the place in which the case

was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims.").

### 1.    There Is No Basis For Going Beyond The Local Legal Market To Determine A Reasonable Hourly Rate For Plaintiff's Counsel

This case was filed in Opelika, and there is no basis for going beyond the local legal market of the Montgomery/Opelika area for determining a reasonable hourly rate for Plaintiff's counsel. There is absolutely no evidence that attorneys in Montgomery or Opelika would have been unwilling or unable to handle this case.

Plaintiff's counsel offer only their own speculative assertions and a xerox copy of the Attorney advertisements in an Opelika phone book to support their contention that there were no counsel available in the Opelika/Montgomery areas to take Plaintiff's case. Even without any evidence from MasterBrand, such allegation fails to meet Plaintiff's burden to demonstrate the reasonableness of counsel's hourly rates and should be rejected by this Court. Defendant offers, however, sufficient evidence in the form of attorney affidavits showing the availability of counsel to handle Plaintiff's case in the relevant local market. (Weller Aff. ¶ 14; Webster Aff. ¶ 7.)

Moreover, the docket of the Middle District of Alabama shows that between January 2005 and January 2007, there were 17 cases (including this case) filed alleging FMLA violations. Of those 17 cases, 9 were brought by counsel based in the Opelika/Montgomery area:

- *Candy Rowland v. Smith & Sons, Inc.*, 3:07-cv-724;
- *Butler Browder v. United States Postal Services*, 2:07-cv-391;
- *Connie Ard v. Entec Stations, Inc.*, 2:07-cv-137;
- *Nathaniel Rivers v. Arvin Meritor Sejong LLC*, 2:07-cv-104;
- *Heather Watts v. Hospitality Ventures LLC*, 2:06-cv-1149;
- *Samuel Houston v. Army Fleet Services LLC*, 1:06-cv-243;
- *Patrick Bailey v. Miltope Corp.*, 2:05-cv-1061;
- *Dora Davis v. Albany International Corp.*, 2:05-cv-1041.[11]

---

[11]    Additionally, a review of the Middle District's docket demonstrates that attorneys Arendall and Arnold have pursued only two FMLA claims, both against MasterBrand, in the last two years, the second of which was filed in the last six months. This evidence undermines any claims by

Because it is highly probable that Plaintiff could have found an attorney in the Montgomery/Opelika area who was both willing and capable of prosecuting his claims in this case (*see* Weller Aff. ¶ 14; Webster Aff. ¶ 7), the relevant legal market for the legal services received by Plaintiff in this case is Auburn/Opelika and perhaps Montgomery, not Alabama as a whole nor some other legal market such as Birmingham. *See, e.g.*, *Miller v. Kenworth of Dothan*, 117 F. Supp. 2d 1247, 1256 & n.4 (M.D. Ala. 2000) (concluding that "[b]ecause Plaintiff filed his case in Montgomery, Alabama . . . the area in and surrounding Montgomery [was] the relevant community to which the court should look" in determining the prevailing rate for legal services and rejecting plaintiff's contention the relevant market was Alabama as a whole or that it included Birmingham); *Laube v. Allen*, 506 F. Supp. 2d 969, 988 (M.D. Ala. 2007) (finding that relevant legal market was Montgomery); *Black v. M.G.A., Inc.*, 51 F. Supp. 2d 1315, 1321 (M.D. Ala. 1999) (finding that the relevant legal community for a case filed in the Middle District of Alabama, Southern Division, was Montgomery, Alabama and declining to consider fees outside the district).

Moreover, the claims and issues in this litigation were neither unusual nor complex and do not justify a reasonable hourly rate outside the Montgomery or Opelika area. Plaintiff's FMLA retaliation claim (his sole claim before the jury) involved simple allegations of disparate treatment based on the different discipline that was issued to employees whom Plaintiff believed were similarly situated to him. Despite Plaintiff's counsel's unsupported assertions regarding the difficulty of FMLA claims, such a retaliation case (which presents the same issues as retaliation claims in the Title VII, § 1981, ADEA, and ADA contexts, and others) cannot be considered complex, and no novel issues of law were presented. *See Nelson v. Sisters of Charity of the Incarnate Word*, 967 F.Supp. 929, 933 (S.D. Tex. 1997) (finding no novel issues of law where the plaintiff alleged a straightforward retaliation claim); *Settlegood v. Portland Pub. Schs.*, 2005 WL

---

Plaintiff's counsel that they possess some specialized legal knowledge or capability to represent plaintiffs in FMLA matters in the relevant legal market.

1899376, *5 (D. Or. Aug. 9, 2005) ("The issues were not novel or complex. Plaintiff's case was a standard retaliation case.")  Plaintiff's claims in this case did not require wide ranging discovery or expert analysis and did not raise any novel legal questions.[12]

### 2.    Plaintiff's Affidavits Fail To Support The Requested Hourly Rates

Plaintiff's counsel filed four affidavits in support of their proposed hourly rates. (*See* Pl.'s Evidentiary Submissions, Exhs. A, B. L, M.)  However, none of this evidence specifically attests to the prevailing rates for legal services within the Auburn/Opelika or Montgomery areas.

First, Arendall's and Arnold's declarations simply declare what they believe is "[t]he appropriate current rate for [their] legal services appropriate to the local market," without indicating what legal market they are referring to.  (*See* Declaration of David R. Arendall ("Arendall Decl.") ¶ IV & Declaration of Allen D. Arnold ("Arnold Decl.") ¶IV (attached as Exhs. L & M respectively to Pl.'s Pet).)  Plaintiff's counsel are located in Birmingham, which constitutes a different legal market than the legal market where this case was litigated. Birmingham is a larger city, and has a larger business community and legal market, than either Montgomery or Opelika.  Because Birmingham is considerably larger, the prevailing hourly rates that attorneys can command there are likely higher than the prevailing rates the same attorneys could command in Montgomery and Opelika.  (See Weller Aff. ¶ 9.)  Consequently, Arendall's and Arnold's purported hourly rates for their work in Birmingham fails to evidence the prevailing rates in Montgomery/Opelika.

---

[12] Plaintiff's counsel's allegations regarding the desirability of FMLA claims is also baseless. Many plaintiffs' attorneys are attracted to FMLA claims.  Because the cost of defense of such claims often exceeds the damages sought, such claims are in many cases settled by defendants for economic reasons or to avoid the risks of going to trial, even where a plaintiff's case lacks substantial merit.  In such situations, which frequently arise, plaintiffs' counsel are able to obtain recoveries with a minimal investment of time and effort.  (See Weller Aff. ¶ 13; Webster Aff. ¶ 8.)  Accordingly, the desirability of the representation taken on by Plaintiff's counsel in this case is, at best for Plaintiff, merely a neutral factor in the attorney fee determination.

Moreover, the remaining two affidavits submitted by Plaintiff's counsel expressly refer to the wrong legal market. Both C. Michael Quinn and Alicia Haynes aver that they are familiar with the rates billed and paid "in *Birmingham*, Montgomery, and Opelika area" and provide their opinions as to "the prevailing market rate *in Alabama* for Plaintiff's attorneys in cases such as the current case." (*See* Affidavit of C. Michael Quinn ("Quinn Aff.") ¶4 & Affidavit of Alicia Haynes ("Haynes Aff.") ¶5 (attached as Exhs. A & B to Pl.'s Pet).) However, as set forth above, the relevant legal market is not Birmingham nor Alabama as a whole, but rather the Montgomery/Opelika area, where the prevailing hourly rates are lower than in Birmingham. Plaintiff's have thus failed to submit any evidence of the appropriate rate within the relevant legal market.

**B.    A Reasonable Hourly Rate Is No Higher Than $250.00 For David Arendall And $150.00 For Allen Arnold**

A fee applicant may meet his burden of establishing his requested rate in the local market "by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." *Miller*, 117 F.Supp.2d at 1254. The Eleventh Circuit has explained that "[w]hat [an attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'" *Dillards*, 213 F.3d at 1354-55; *see also Williams v. Ill. Dep't of Corr.*, 2007 WL 2316476, * 3 (S.D. Ill. Aug. 13, 2007) (quoting *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (finding that a reasonable hourly rate is best reflected in an attorney's actual billing rate for equivalent work)). On the other hand, "a court should hesitate to give controlling weight to prior awards, even thought they may be relevant . . . . The reason is obvious: Prior awards are not direct evidence of market behavior; the court is not a legal souk." *Dillards,* 213 F. 3d at 1355.

If a fee applicant relies on opinion evidence to establish the reasonableness of his requested rate, "[t]he weight to be given" to such evidence "will be affected by the detail

contained in the testimony on matters such as similarity of skill, reputation, experience, similarity

of case and client, and breadth of the sample of which the expert has knowledge." *Miller*, 117 F.

Supp. 2d at 1254. Furthermore, in evaluating the comparability of market rates attested to, a court

may consider one or more of the twelve factors set forth in *Johnson v. Georgia Highway Express,*

*Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* This Court has stated that it relies primarily on the

following *Johnson* factors: "the skill required to perform the legal services properly; the

customary fee in the community; and the experience, reputation, and ability of the attorney." *Ellis*

*v. City of Montgomery*, 2007 WL 2021967, *4 (M.D. Ala. July 9, 2007).

        1.    **Arnold**

        Arnold is a 2004 law school graduate and thus was a second and third year

associate over the course of this case. As noted above, Arnold seeks fees based on purported

hourly rates of $200 per hour for 2006 and $235 per hour for 2007.

        Remarkably, <u>none</u> of Plaintiff's submissions supports Arnold's claim that his

hourly rate was $200 in 2006 as a second year associate. Even Arnold's <u>own</u> <u>declaration</u> fails to

state what he actually charged or was paid for his services in either 2006 or 2007. His declaration

also fails to provide any information regarding what he believes to be the applicable reasonable

market rate for his services <u>throughout</u> <u>this</u> <u>case</u> (which was filed in June 2006, and litigated

through December 2007), and instead only provides a statement of what he believes to be the

"applicable current" rate for his legal services. (*See* Arnold Decl., Exh. L to Pl. Pet..)

        Significantly, Arnold has not submitted any direct evidence of what fees he has

charged and been paid in the past for legal services. Although Arnold avers that he "has

represented some small businesses for defense purposes" (Arnold Decl. ¶III), and although Arnold

presumably charged an hourly rate for his services in those matters, he fails to indicate what that

rate was. Arnold has also failed to provide any evidence of what rates he has been awarded in

other cases. Arnold's fee application is thus based entirely on opinion testimony.

MasterBrand has submitted affidavits from two attorneys who have practiced extensively in the relevant legal market.  Christopher Weller is a litigator practicing since 1987 with significant litigation experience in the Middle District, including in the relevant local market of the Opelika/Montgomery area.  (Weller Aff. ¶¶ 3, 4)  William Webster is has practiced since 1992 and handles civil litigation matters, including employment matters, in the relevant local market of the Opelika/Montgomery area.  (Webster Aff. ¶ 2.)  Both attorneys have familiarized themselves with the claims and issues presented in this case as well as the qualifications of Plaintiff's counsel.  (Webster Aff. ¶5; Weller Aff. ¶ 3.)  Additionally, both are aware of the prevailing rates in the relevant legal market.  (See Weller Aff. ¶¶ 3, 4, 6, 10, 11; Webster Aff. ¶¶ 2, 4.)  Based on their knowledge of the prevailing rates within the Montgomery/Opelika area for attorneys of comparable experience in cases similar to this one, Weller and Webster are of the opinion that a junior associate such as Arnold would command an hourly rate no greater than $150.00  for this case.  (Weller Aff. ¶ 7, 8, 10, 11, 16; Webster Aff. ¶¶ 5, 9-11.)  *Cf. Laube*, 506 F. Supp. 2d at 988 (finding in 2007 that appropriate hourly rate for first-year associate was $160 for civil rights case proceeding in Montgomery); *Simpleville Music v. Mizell*, No. 2007 WL 496755 (M.D. Ala. Feb. 13, 2007) (awarding associate with one to two years of experience an hourly rate of $160 in business litigation).

## 2.    <u>Arendall</u>

As noted above, Arendall seeks a rate in this case of $350 per hours for 2006 and $400 per hour for 2007.  Like Arnold, Arendall fails to provide any evidence of the rates he has actually charged and been paid in the past.  Although Arendall avers that he has represented "defendants in employment related cases" (Arendall Decl. ¶V.C.), and although he presumably was paid at an hourly rate for such work, Arendall fails to reveal what that rate was.  Arendall also fails to indicate what rates he has been awarded in other cases.  Arendall's claimed hourly rates are,

therefore, like Arnold's, based entirely on opinion testimony that is irrelevant because it fails to address the relevant legal market.

The statements submitted by Plaintiff's counsel regarding Attorney Arendall's experience and commitment to efficiency are insufficient and undermined by the events in this litigation. For example, Attorney Arendall professed in his Declaration that his services included a thorough comprehension of the law, case assessment that required him to weed out unproductive theories and claims and focus on those points most likely to prevail, among others. Such boilerplate assertions ring hollow in light of the fact that Plaintiff alleged an FMLA interference claim that was invalid on its face, sought mental anguish damages (asserted in the Amended Complaint) that are not available under the FMLA, and committed other errors in this litigation. *See Navarro v. General Nutrition Corp.*, 2005 WL 2333803, * 8-9 (N.D. Cal. Sept. 22, 2005) (finding $325/hour excessive and reducing plaintiff's counsel's fee in an FMLA case to $190/hour where his several errors during the course of litigation undermined his assertions of his expertise and skill). The declarations from Mr. Quinn and Ms. Haynes do not state whether they considered such errors in rating Mr. Arnold's and Mr. Arendall's "extensive knowledge of trial practice and the substantive law of employment discrimination." (See Haynes Aff. ¶8; Quinn Aff. ¶ 7.)[13]

Weller and Webster, who have familiarized themselves with Arendall's qualifications, are of the opinion that the appropriate hourly rate for an attorney of his caliber within the Montgomery/Opelika area for a case such as this one would be no greater than $250.00. (Webster Aff. ¶ 5, 9-11; Weller Aff. ¶ 5, 6, 8, 10, 11, 16.) These opinions are consistent with rates awarded recently in other cases in the Middle District of Alabama. *Cf. Ellis,* 2007 WL 2021967 at *4 (awarding lead attorney in non-complex case $200 per hour); *Simpleville Music v. Mizell*, 2007

---

[13] Such errors also undermine any assertions that Mr. Arnold and Mr. Arendall possessed some specific knowledge or experience relating to FMLA claims that render them more capable than other counsel who routinely represent plaintiffs in employment cases, further weakening Plaintiff's claims that there were no available and able counsel in the Opelika/Montgomery area.

WL 496755 (M.D. Ala. Feb. 13, 2007) (awarding lead attorney rate of $300 per hour in business litigation); *Kendrick v. Broadcast Media Group LLC*, 2006 WL 2709846 (M.D. Ala. Sept. 20, 2006) (awarding C. Michael Quinn rate of $300 per hour in discrimination case). In fact, as Declarant Chris Weller explains, he is unaware of any case in which an attorney was awarded more than $300 per hour for an employment or labor matter in the Middle District of Alabama. (Weller Aff. ¶ 10.) Accordingly, the Court should not award an hourly rate for work performed by David Arendall any greater than $250.00 for this case.[14]

### III.    The "Lodestar" Amount Should Be Adjusted Downward

Taking into consideration the various reductions set forth above, the *maximum* "lodestar" amounts for Arendall and Arnold are as follows:

**Arendall**

| | |
|---|---|
| Claimed time: | 143.8 hours |
| Less 20% reduction for vague and excessive trial preparation time: | -28.8 hours |
| Less time on unsuccessful claims | -3.0 hours |
| Less travel time | -21.0 hours |
| Less duplicate and/or excessive entries | -0.1 hours |
| Total time: | 90.9 hours |

maximum Lodestar: 90.9 hours X $250.00 hourly rate = $ 22,725.00

---

[14]  In another matter in this Court, Foreman v. Masterbrand Cabinets, Inc., Cause No. 3:06-CV-449-MHT, a matter Plaintiff's counsel recently litigated against MasterBrand, Defendant agreed in a settlement between the parties on attorneys' fees to hourly rates for Mr. Arendall and Mr. Arnold higher than those for which MasterBrand argues in this Brief. Any argument Plaintiff's counsel might make that such hourly rates should be viewed by this Court as reasonable, or that MasterBrand has determined such rates to be reasonable for any matter litigated by Mr. Arnold and Mr. Arendall, should be rejected. The hourly rates agreed upon were part of a global attorney fee settlement reached in both parties' interests in repose in the other matter and with considerable billing judgment applied.

**Arnold**

| | |
|---|---|
| Claimed time: | 111.4 hours |
| Less time on frivolous and unsuccessful claims: | -0.2 hours |
| Less time on frivolous motions: | -5.0 hours |
| Less duplicate and/or excessive entries: | -2.5 hours |
| Total time: | |

maximum Lodestar: 103.7 hours X $150.00 hourly rate = $15,555.00

## IV.   Conclusion

For the reasons set forth above, MasterBrand respectfully requests that if any

attorneys fees are awarded to Plaintiff's counsel, those fees not exceed a total of $38,280.00.

Respectfully submitted,

**BAKER & DANIELS LLP**

s/Kelley Bertoux Creveling
Mark J. Romaniuk (#15255-49)
Kelley Bertoux Creveling (#19309-49)
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-mail:  mark.romaniuk@bakerd.com
          kelley.creveling@bakerd.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2007, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to the following party by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.

David R. Arendall
Allen D. Arnold
**ARENDALL & ASSOCIATES**
2018 Morris Avenue, Suite 300
Birmingham, Alabama 35203
dra@arendalllaw.com
ada@arendalllaw.com

*Attorneys for Plaintiff*

s/Kelley Bertoux Creveling